450 So.2d 746 (1984)
MULLER ELECTRIC CORPORATION
v.
E.I. DUPONT DE NEMOURS & CO., INC., and Kendall Construction Co., Inc.
No. 83-CA-822.
Court of Appeal of Louisiana, Fifth Circuit.
May 14, 1984.
*747 Jerome P. Halford, New Orleans, for plaintiff-appellant.
Reuter, Reuter, Reuter & Pizza, Arthur C. Reuter, Jr., New Orleans, for Kendall Const. Co., Inc., defendant-appellee.
Before BOUTALL, C.J., and CHEHARDY and DUFRESNE, JJ.
CHEHARDY, Judge.
Plaintiff, Muller Electric Corporation, instituted this suit on a contract and to enforce a materialman's lien against Kendall Construction Co., Inc., and E.I. Dupont De Nemours & Co., Inc.
The record reflects the following facts:
On February 11, 1980, Dupont entered into a contract with Kendall Construction, the primary contractor, to build a laboratory and storage plant in St. John the Baptist Parish. Kendall in turn contracted with Muller Electric on June 9, 1980 to perform the electrical work on the project. Neither contract was recorded in the parish records.
When a large portion of the bill remained unpaid after the work was completed in 1982, plaintiff filed its lien and instituted this suit. Subsequently a settlement was reached whereby Dupont was dismissed from the suit after it paid plaintiff the retainage of $25,002.03, and plaintiff reserved its right to proceed against Kendall for the matters still in dispute. The contested items concern two claims for extras in the sum of $4,473 and $376, clean up charges of $425.96, and interest and costs.
Following trial, judgment was rendered in favor of plaintiff for the sum of $376 on one invoice, $156 for recordation and filing of the materialman's lien, and "interest on all amounts paid, both pursuant to the compromise heretofore entered into between the parties, and amounts awarded herein."
Judgment was rendered in favor of Kendall Construction Co., Inc., in the sum of $425.96 allowed as a chargeback against plaintiff, and plaintiff's claim against defendant for $4,473 under Invoice No. 8420 was dismissed. Each party was ordered to bear its own cost.
Plaintiff has appealed and defendant has answered the appeal.
In this court plaintiff-appellant contends the trial court erred in (1) disallowing the # 4,473 claim; (2) allowing the chargeback of $425.96; and (3) failing to allow it to recover court costs.
*748 Relative to appellant's first contention, the bill for $4,473 represents the cost of labor and material for furnishing and installing control wiring for 26 exhaust fans and four air handling units, including connections, firestats, solenoid valves and stop/start push buttons. (A firestat is a devise enabling a unit to cut off the motor in the event of fire.)
Plaintiff contends this was extra work not contemplated by the contract, plans or specifications. Defendant contends it was part of plaintiff's contractual obligation.
From the documentary evidence and the testimony of the witnesses it is clear that a problem existed in interpretation of the specifications prior to the time plaintiff submitted its bid.
John Tauzy, plaintiff's electrical estimator, prepared the original bid. He reviewed all of the specifications and noted a conflict in the section dealing with controls.
The electrical specifications called for some work relative to exhaust fans under the supervision of the mechanical or control contractor, and the mechanical specifications defined the control work as part of the mechanical contractor's responsibility.
Tauzy called the electrical engineer employed by the architect and discussed the apparent conflict with him. After this conversation he concluded it was not part of the electrical contractor's responsibility and submitted his bid accordingly.
While the work was in progress Tauzy received a letter from Emile Babst & Co., Inc., the industrial and mechanical contractor, indicating their control contractor, Johnson Controls, was questioning the firestat installation on the equipment fans. Johnson proposed to furnish the firestats to Muller, with Muller to provide the installation and wiring.
Tauzy replied by phone and letter that the specifications called for the electrical contractor to connect the firestats for single phase fans if the fans were associated with the lab hoods or benches and not if the firestats were associated with other lab equipment.
Tauzy then wrote to Mr. Charles Zammit at Kendall Construction, enclosing Babst's letter, stating plaintiff's position with reference to the controlsnamely that Muller would connect the firestats to the single phase exhaust fans and that all other control wiring was the responsibility of the control contractor.
John Baxter, assistant general superintendent of Kendall Corporation, answered Tauzy's letter indicating the power wiring was plaintiff's responsibility and ordered it to proceed with the work immediately to maintain job progress.
Baxter testified the specifications were ambiguous and that they did not clearly provide what areas the firestats, solenoid and valves were part of. He noted it was specified everywhere in the control documents, but he decided it was part of the electrical contract because the plans show it in the power wiring and not in the control wiring. He authorized Muller to provide the power to the fan motors, keep records, and submit a claim.
Tauzy testified the additional work was done by Muller and daily time and material records were kept at Baxter's direction, and each record was signed by a representative of Kendall Construction Co. Tauzy stated it is not customary to keep time and material sheets for work clearly covered under a contract, nor is it customary or necessary for the contractor to sign time or material sheets for work done on the job. Baxter acknowledged the request to keep time and material sheets, but indicated it was only for the purpose of considering the claim.
If we were to adopt plaintiff's position the invoice covers extra work not called for under the contract. If we were to adopt Kendall's interpretation, the work performed was provided for by the contract.
With respect to the interpretation of agreements our Civil Code provides:
"When the intent of the parties is doubtful, the construction put upon it, by the manner in which it has been executed by both, or by one with the express or *749 implied assent of the other, furnishes a rule for its interpretation." LSA-C.C. art. 1956.
Since Baxter acknowledged the contract was ambiguous and accurate records were kept to verify the work performed, we conclude Kendall is responsible for payment for the extra work involved, and we will amend the judgment accordingly.
Relative to appellant's second contention, the contract provides for daily clean-up work.
Tauzy testified whenever there was trash on the job the foreman requested a truck to take trash to the dump. The trash consisted principally of boxes for lighting fixtures, receptacles, switches and extra pipe cut off and not used. Tauzy visited the job site on four occasions.
Mr. Muller, vice president of Muller Electric, handled all of the billing. He received the bill for clean-up work in April 1980 and immediately called Michael Gurtler, president of Kendall Corporation. Gurtler told him the bill was being sent to all subcontractors in case they did not do their own clean up, and advised him to ignore the bill.
Muller received no other bill, but following suit Kendall Construction deducted $425.96 for clean-up charges from payment of another bill paid to Muller Electric for work performed. Mr. Muller had petty cash receipts showing the times plaintiff's trash was hauled to the city of Kenner land fill from December 3, 1980 through May 21, 1981.
Mr. Baxter, the only witness to testify on behalf of Kendall, stated plaintiff was charged for trash hauling because its field superintendent refused to maintain the cleanliness standards demanded by the safety department, OSHA or plant safety regulations which are extraordinarily strict requiring daily clean up. He was on the job daily.
Baxter knew Gurtler had told Mr. Muller to forget the bill, because they were satisfied with the electrical work, but Baxter claims the charge was simply deferred until later. He testified the bill of $425.96 was for 10 hours of work on April 8 and 9, 1981.
We find insufficient evidence in the record to support a charge of over $400.00 for a few hours of work principally involved with removing empty boxes, and are therefore of the opinion defendant has not borne the burden of proof that it was entitled to this chargeback.
Relative to plaintiff's final contention, the trial court ordered each party to bear its own costs. Plaintiff-appellant contends equity should allow it to recover out-of-pocket court costs.
LSA-C.C.P. art. 1920 provides:
"Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.
"Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable."
As stated above, the basic rule is that all costs, both the prevailing side's and his or her own, are to be paid by the party cast although the court may make an "equitable" different provision for costs. That limit denies to a trial judge the power either to deny his or her own costs to a prevailing party or to assess another party's costs against a prevailing party unless some circumstances present in the case justify doing so. See Bonfanti Marine, Inc. v. State, 444 So.2d 218 (La.App. 1st Cir.1983); Bowman v. New Orleans Public Service Inc., 410 So.2d 270 (La.App. 4th Cir.1982).
The underlying principle of the code and the jurisprudence is that the party whose behavior unjustifiably causes costs to be incurred ought to pay them.
We agree with plaintiff-appellant's position. It is entitled to be paid for all costs in these proceedings.
Defendant has answered the appeal claiming error (1) in awarding interest on the compromise agreement, and (2) in the *750 trial court award of $376 to plaintiff on one of the invoices.
Defendant asserts that the subcontract agreement provides that Muller was not to receive its retainage until those funds were actually received from the owner (Dupont).
The compromise agreement sets forth that Muller's retainage was to be paid to it contemporaneously with Kendall's receipt of the retainage from the owner. As specifically noted under the terms of the receipt and release agreement, payment was made by joint check from the owner, endorsed to the order of Muller Electric Corporation. Since the retainage payment was made to plaintiff at the time provided for under the contract, we agree with defendant's position on this issue only insofar as it refers to interest on the retainage funds.
We do not agree with their second contention.
Plaintiff charged defendant $376 for rerouting a conduit wire which it had already installed, because the missile deflector was much larger than that shown on the plans. When the deflector arrived it would not fit into the room, so the conduit had to be rerouted through no fault of plaintiff. It is entitled to be paid for that work.
For the reasons assigned the judgment appealed from is reversed insofar as it dismisses the claim against Muller Electric Corporation represented by Invoice No. 8420, and it is now ordered that there be judgment in favor of Muller Electric Corporation and against Kendall Construction Co., Inc., on this invoice for the sum of $4,473.00.
The judgment is further reversed insofar as it allows a chargeback against Miller Electric Corporation by Kendall Construction Co., Inc., in the amount of $425.96 for clean-up expenses.
The judgment is reversed insofar as it orders each party to bear its own costs, and it is now ordered that defendant pay all costs of these proceedings in both courts.
The judgment is amended to award Muller Electric Corporation interest only on all moneys paid or awarded herein, other than that paid pursuant to the compromise agreement on the retainage.
In all other respects the judgment appealed from is affirmed.
AMENDED AND AFFIRMED IN PART; REVERSED IN PART.