572 So.2d 1070 (1990)
Tan LE and Lisa Le
v.
JOHNSTOWN PROPERTIES d/b/a Tres Vidas Apartment Community, Consolidated Capital II and Liberty Mutual Insurance Company.
No. 90-CA-179.
Court of Appeal of Louisiana, Fifth Circuit.
December 12, 1990.
*1071 Darryl J. Carimi, Carimi Law Firm, Metairie, for plaintiffs-appellants.
Thomas C. Cowan, John K. Leach, Christovich & Kearney, New Orleans, for defendants-appellees.
Before GAUDIN, GRISBAUM and WICKER, JJ.
GRISBAUM, Judge.
This is a personal injury matter in which the plaintiffs-appellants are appealing the unanimous verdict of a 12-person jury in favor of the defendants-appellees. We affirm.

ISSUES
(1) Whether the jury erred in finding that the defendants were free from fault,
(2) Whether the jury erred in finding that the plaintiff was 100 percent contributorily negligent, and
(3) Whether the trial court erred in failing to give requested jury instructions.

FACTS
At the time of the accident, plaintiffs, Tan Le and Lisa Le, were leasing an apartment in the Tres Vidas Apartment Complex, which was owned by Consolidated Properties and managed by Johnstown Properties. On August 15, 1985, during Hurricane Danny, plaintiff, Tan Le, was injured when he slipped on a wet kitchen floor and slid into the stove causing a pot of hot soup to be spilled over his upper torso. Plaintiffs filed suit against the defendants, Johnstown Properties d/b/a Tres Vidas Apartment Community, Consolidated Capital II, and Liberty Mutual Insurance Company, alleging a defect in the exterior wall which caused seepage into the kitchen and living area creating an unreasonable risk of harm.
After trial, the jury returned a unanimous verdict finding no defect in the wall, that the defendants were not negligent, and that Tan Le was 100 percent contributorily negligent. Thereafter, plaintiffs filed a motion for judgment notwithstanding the verdict and in the alternative a motion for a new trial. Both motions were denied, and, thus, this appeal followed.

*1072 ISSUE ONE

LAW
La.C.C. art. 2322 provides that "The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction."
Additionally, our jurisprudence in Antonatos v. Hampton, 480 So.2d 1029, 1031 (La.App. 5th Cir.1985) provides:
It is well[-]settled in Louisiana that an appellate court should not disturb a trier of fact's evaluation of credibility and inferences of fact unless it is demonstrated that such evaluations and inferences are clearly wrong. It is not enough that this court may have reached a difference conclusion, but rather we must be convinced that the conclusions reached by the trier of fact were not merely erroneous, but manifestly erroneous. Dugas v. Mouton, 460 So.2d 739 (La.App. 3rd Cir.1984); Wilson v. Jacobs, 438 So.2d 1119 (La. App. 2nd Cir.1982); Lemeshewsky v. Dumaine, 464 So.2d 973 (La.App. 4th Cir. 1985); Rome v. State Farm Mut. Auto Ins. Co., 439 So.2d 1253 (La.App. 5th Cir.1983); Canter v. Koehring Co., 283 So.2d 716 (La.1973).
Further, Waters v. McDaniel Recreation Center, Inc., 521 So.2d 788, 790 (La.App. 2d Cir.1988), writ denied, 524 So.2d 520 (La.1988) provides:
On appeal the plaintiffs assert the theories of both strict liability and negligence. In a case alleging these alternate theories of liability on one having custody of immovable property, the difference between the two theories is the proof that each requires. Under a negligence theory, plaintiff must prove that the owner or custodian knew or should have known of the unreasonable risk of harm posed by the property. Under a strict liability theory, plaintiff is relieved of proving this knowledge. Carter v. Board of Supervisors of Louisiana State University, 459 So.2d 1263 (La. App. 1st Cir.1984), writ denied, 462 So.2d 1248 (La.1985); Kent v. Gulf States Utilities Company, 418 So.2d 493 (La.1982). Under either theory, the plaintiff has the burden of proving the following: (1) that the defendant had custody of the property causing the damage; (2) that the property was defective because it had a condition that created an unreasonable risk of harm; and (3) that the defect was the cause in fact of the injury. Carter v. Board of Supervisors of Louisiana State University, supra.

ANALYSIS
Here, plaintiffs are alleging a defect in the exterior wall which trapped water and caused it to leak through a crack in the kitchen floor. At trial, three experts were called to testify regarding the condition of the exterior wall.
First, Andrew Polmer testified for plaintiffs as an expert in the area of real estate and home inspection. Mr. Polmer states that he inspected the Le apartment and the exterior wall on August 29, 1985. He found cracks and spaces between the grouting material and the wall. He estimated these cracks to be anywhere from 1/8 of an inch to 1/16 of an inch.
Next, Ralph Junius, a civil engineer, testified for the plaintiffs. Because he did not inspect the premises until 1988, he was unable to testify as to the exact condition of the exterior wall in August 1985. Nevertheless, Mr. Junius did render an opinion based upon his personal observations in 1988 and 1989 and pictures of small areas of the wall taken in 1985. In his opinion, the building was defectively constructed and he stated that unless the caulking and grouting was kept in "tip top" condition, water would leak into the apartment.
When cross-examined, Mr. Junius testified that water would only enter the apartment under certain circumstances, i.e., heavy rain with a wind out of the south. In other words, the rain would have to be of sufficient duration and quantity in order to cause leaking into the apartment.
Lastly, E. Sorrell Lanier testified as a civil engineering expert for the defense. He stated that, when constructed, the design *1073 served its purpose, but, in its present condition, it is likely water would leak into the apartment. Additionally, he observed that whether or not any water would enter the apartment is dependent upon the size of the cracks. If the cracks were less than 1/16 of an inch in 1985, then it is unlikely that water leaked into the apartment. Furthermore, he states that it is impossible to determine to any degree of certainty, simply by viewing photographs taken at that time, whether there were indeed cracks and, if so, how large they were in 1985.
Other testimony included that of Lisa Le who testified that she notified the apartment manager of the leak on August 15, 1985. Although there is some question as to whether or not this complaint was received on August 15 or 16, 1985, it is undisputed that the apartment was wet vacuumed on August 16, 1985 by maintenance personnel.
From the foregoing testimony, one may infer that it was more probable than not, given the severe weather conditions on that day, that water did in fact enter the apartment. However, not every defect can serve as a basis for a claim. The defect must be of such a nature as to constitute a dangerous condition which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. Henry v. Safeco Ins. Co., 498 So.2d 1116 (La.App. 3d Cir.1986), writ denied, 501 So.2d 235 (La.1987).
Although Lisa Le testified that she had previously complained of water leaking into the apartment, maintenance records are void of any such evidence. Additionally, there is no evidence that water has leaked into the apartment since that time. Therefore, the jury may have concluded that the flooding was a one-time occurrence, brought about by an act of God, Hurricane Danny. Using the utility-risk balancing test, it was reasonable to conclude that, although there may have been cracks in the exterior wall, this did not create the unreasonable risk of injury necessary for a finding of strict liability.
Hence, the question now becomes one of negligence. The duty owed by a land owner is governed by a standard of reasonableness and a potentially dangerous condition that should be obvious to all is not, in all instances, unreasonably dangerous. Murray v. Ramada Inns, Inc., 521 So.2d 1123 (La.1988).
Here, the defendants had no duty to warn the plaintiffs since both Mr. and Mrs. Le testified that they were aware that there was water on the floor and that this created a potential hazard. Therefore, it must be determined whether or not the defendants acted reasonably vis-a-vis the plaintiffs in correcting the problem.
Again, given the weather conditions on August 15, 1985, it was reasonable for the jury to conclude that the defendants were not negligent, even though the apartment was not wet vacuumed until the following day. Furthermore, there is no evidence to suggest that anything more than vacuuming the apartment was necessary as there is no evidence that this was a recurring problem. Ergo, under the circumstances, a 24-hour delay in cleaning the apartment was reasonable and, therefore, the defendants were not negligent.

ISSUE TWO

LAW
La.C.C. art. 2323 provides:
When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss.
Negligence is a question of fact to be decided by the jury. Whether a fact finder determines a party to be one percent at fault, totally at fault, or somewhere in between, the manifest error rule applies. Thomas v. Missouri-Pac. R.R. Co., 451 *1074 So.2d 1152 (La.App. 3d Cir.1984). The plaintiffs cite Murray v. Ramada Inns, Inc., supra for the proposition that assumption of the risk no longer totally bars recovery. While this is true, it does not preclude the finding of 100 percent contributory negligence on the part of the plaintiff under the doctrine of comparative fault.
As stated by the Murray court:
However, the key to a finding of no liability in such cases is not the plaintiff's subjective awareness of the risk, but the determination that the defendant did not act unreasonably vis-a-vis the plaintiff, or injure the plaintiff through the instrumentality of an unreasonably dangerous thing in his custody. The determination of what the plaintiff knew regarding the risk of injury is made after fault on the part of the defendant has been established, and is governed by the comparative fault principles ennunciated [sic] in La.Civ.Code art. 2323.
Murray, supra, at 1136.

ANALYSIS
Here, the jury concluded that the defendants were not strictly liable and that they acted reasonably and, therefore, were not negligent. Once the defendant is found to be free from fault, the only logical conclusion is that the plaintiff failed to exercise ordinary care for his own safety at the time of the accident. Thus, we find no manifest error.

ISSUE THREE

LAW
La.C.C.P. art. 1793(C) provides:
A party may not assign as error the giving or the failure to give an instruction unless he objects thereto either before the jury retires to consider its verdict or immediately after the jury retires, stating specifically the matter to which he objects and the grounds of his objection. If he objects prior to the time the jury retires, he shall be given an opportunity to make the objection out of the hearing of the jury.
La.C.C.P. art. 1793 specifically requires that the litigant must not only object to each special charge which is refused, but must also state the grounds for each such objection. Hill v. Lamulle, 506 So.2d 690 (La.App. 5th Cir.1987).

ANALYSIS
The requested plaintiffs' jury charge which the trial court refused to give to the jury states:
"HOLD HARMLESS" Claim in Lease[1]
In [the] opening statement you were told by the defendants that Mr. and Mrs. Le accepted responsibility, in the written lease, for the leased premises.[2] This was one of the defendant's [sic] asserted legal defenses to this claim.
However, under Louisiana [l]aw, a tenant can only be responsible for a defect in the premises that is under the tenant's own supervision and control. Based upon the evidence presented by the witnesses who worked for management and the proof of the experts that if a defect existed it was inthe [sic] outside wall ... and since[,] both according to the lease and the testimony, the tenant cannot make changes or repairs to the outside wall[,] ... I have found as a matter of law that the tenant is not responsible for any defect as alleged in the outside wall.

*1075 Therefore, the lease "[H]old Harmless" clausesParagraph #[s] [15] and [17] do not apply in this situation and you should not consider them. Management and the owner are responsible for any defectsif you find defects to existin the outside wall.
(Emphasis found in the original.)
At the close of the evidence and out of the presence of the jury, the following colloquy between the court and counsel for appellants appears in the record:
THE COURT:
Counsel, do you want to make your objections to the jury charges?
MR. CARIMI:
Your Honor, the plaintiff objects to the use of numberit's so very difficult to make this clearpage 13 the victim's fault charge. We object to the Court giving that.
We object to giving of the act of God charge, your Honor, which is requestedspecial request jury charge number 11 I believe as submitted to the Court.
We object to [the] use of charge number 15 regarding the negligence of third party Singer Housing Company, feeling there was no clear prove [sic] of negligence on Singer's behalf.
We object to jury charge number 8 which is defendant's charge. We object to the charge on failure to call the treating physician. We feel the defense had ample opportunity to call any physician they wanted to[,] specially [sic] Dr. Kantack.
We further object to the court's failure to give plaintiff's charges 1, 2, 5, 12, 17, 19 and 20.
Therefore, in light of our statutory mandate and our jurisprudential guidelines it becomes quite evident that plaintiffs' counsel's blanket objections to certain jury charges not being given to the jury simply fail to comply with our statutory scheme. Accordingly, we have no authority to address the contention that the trial court erred by failing to give specific jury instructions. Ergo, this assignment of error lacks merit.
For the reasons assigned, the judgment of the trial court is affirmed. All costs of this appeal are to be assessed against the appellants.
AFFIRMED.
NOTES
[1] This lease provision reads as follows:

15. HOLD HARMLESS: Management shall not be liable for injury or damage on or about the Apartments except where such is due to Management's gross negligence. Resident shall be responsible for obtaining fire, extended coverage and liability insurance with respect to the contents of the Apartment.
[2] This lease provision reads as follows:

17. INDEMNIFICATION: Resident releases Management from liability for and agrees to indemnify Management against all losses incurred by Management as a result of (a) Resident's failure to comply with this Agreement; (b) any damage or injury happening in or about the Apartment to Resident's invitees or licensees or such person's property not caused by Management; (c) damage or loss in or about the Apartment or Apartment Community caused by Resident's family, invitees or licensees, or (d) Resident's failure to comply with any requirements imposed by any governmental authority; and (e) any judgment, lien or other encumbrance filed against Apartment as a result of Resident's action.