|2GOTHARD, Judge.
Plaintiff brings this appeal from a jury verdict absolving the defendants from liability and dismissing plaintiffs ease. Plaintiff, Donald Depp, filed this action for damages sustained in a trip and fall on his property in April, 1989. Made defendants in the action were Louisiana Power and Light (LP & L) and Highline Construction Company (High-line).
The facts show that the construction of a swimming pool required the relocation of a utility pole owned by defendant LP & L. The pole was located on plaintiffs property, a vacant lot adjacent to the property on which the swimming pool was being constructed. LP & L contracted with Highline to move the utility pole. While employees of Highline were in the process of moving the pole, plaintiff came on the scene. When he turned to leave, he tripped over a coil of cable about four feet wide and eight or ten inches high, or about the size of an automobile tire. The cable was placed on the ground about ten feet from the pole by Highline employees. All parties agree that the lot was an improved one with low cut grass, and that the coil was clearly visible.
|3At this point the recitation of the facts differs in the testimony. Plaintiff testified that he came to the lot to meet with LP & L representatives to discuss where the pole should be moved, and was confused and somewhat annoyed to find that the pole had already been moved to a new location on his property without his input. He explained that the property had been subdivided and that the lot abutting the pole was no longer a part of the property on which the house and the new pool were being constructed. He stated that he owned the vacant lot and had been discussing the relocation of the pole with LP & L officials for some time and was disconcerted to find the pole had been moved without his knowledge.
He further stated that he called out to the men on the pole to question them about the relocation of the pole, but they ignored him. He decided that he would leave the site and telephone LP & L for an explanation. When he turned to go back to his car, he tripped over the coil of cable on the ground. He injured his knee but was able to walk back to his car. A friend, who had accompanied him and waited in the car while the plaintiff conferred with the men working on the pole, went to a nearby convenience store and got a bag of ice for plaintiffs knee.
Robert Dickerson, an employee of High-line, testified that they had just set a new pole next to the old one and were transferring the wires over to the new pole when the plaintiff arrived. Mr. Dickerson explained that he was on the ground operating a hand-line which he used to send up tools to the two men on the pole. He stated that he was standing somewhat away from the pole to protect himself from injury should one of his *742 fellow workers drop a tool from atop the pole.
|4He testified that the plaintiff approached, walking about five steps away from the coil. Mr. Dickerson stated that he warned the plaintiff of the danger of things falling from the pole and advised him not to get any closer. The plaintiff appeared to be somewhat angry and asked to speak to the foreman. Mr. Dickerson informed him that the foreman was up on the pole, but would be down soon. At this point the plaintiff turned to leave and tripped over the coil. Mr. Dickerson confirmed that the plaintiff put an ice pack on his knee after the fall.
Mr. Ronald Dickerson, who is Mr. Robert Dickerson’s father and also an employee of Highline, testified that he was the foreman on the job of moving the pole. He explained that he knocked on the door of the residence and asked the woman who answered for permission to go on the property and move the pole. She stated that he could go and do his work and that she would call the owner. Consequently, Ronald Dickerson proceeded to set a new pole about twelve feet from the old pole to accommodate the building of a swimming pool on the adjoining property. He stated that he was not aware that there was a vacant lot between the house and the pole. He testified that it looked like one large yard, all part of one piece of property, well kept and low cut. He further stated that his workers had several pieces of equipment laid out on the ground about ten feet from the pole. This equipment included the coil, a handline, a chain horse and a press.
He was about thirty-five feet atop the pole transferring the service from the old pole to the new one when the plaintiff approached. Mr. Dickerson was told that the plaintiff was the owner of the property and wished to speak to him. When Mr. Dickerson completed his work, about twenty-five minutes later, he |5descended the pole and went over to speak to the plaintiff, who was sitting down with an ice pack on his knee.
Other evidence was offered by the plaintiffs treating physician, Dr. John Watermeier, who testified that the plaintiff sustained a torn meniscus, which is a cushion between the bones in the knee.
After hearing all of the evidence the jury, in answer to interrogatories, found that the plaintiff had suffered an injury as a result of the fall, but that neither LP & L nor High-line was responsible.
In his first assignment of error on appeal, plaintiff argues that the trial court erred in failing to properly instruct the jury as to the duty owed by the defendants to plaintiff. Plaintiff contends the trial court should have instructed the jury that defendants had a duty to warn of the hazards put on plaintiffs property by the defendants, and to barricade the construction site. Further, plaintiff argues, the jury should have been instructed to consider other factors such as the time of day, the nature of the pathway and, what the plaintiff labeled “the distraction to the attention familiarity with the obstruction”, as well as the size, situation and color of the obstruction.
The record shows that, prior to the closing arguments the trial court made the following statement:
THE COURT:
“Okay, I just want to put on the record, counsel had an opportunity to go over the general charges, that I received no request for charges from defendant. The charges that I got from plaintiff, mostly didn’t have much to do with this kind of case. We have done our general charges and everybody seems to approve.”
|6Both counsel made their closing arguments and the trial court instructed the jury in the general duty/risk analysis of the law of negligence without objection from either party.
Plaintiff does not make reference to, nor does the record contain, the charges requested by the plaintiff. Thus, this court cannot find error in the trial court’s refusal to give those charges.
LSA-C.C.P. art. 1793C provides that, in order to assign as error the giving or the failure to give an instruction, a party must object thereto either before the jury retires to consider its verdict or immediately after the jury retires, stating specifically the matter to which he objects and the grounds of his objection. It is clear that the plaintiff did *743 not object to and, in fact, tacitly agreed to the charges given by the trial court. Accordingly, plaintiff has waived his right to argue this matter on appeal. Lynch v. Hanover Ins. Co., 611 So.2d 121 (La.App. 5 Cir.1992), writ denied, 613 So.2d 996 (La.1993).
In his second assignment of error the plaintiff argues that there is manifest error in the jury finding that there is no liability on the part of either defendant. The scope of our review in matters of factual determinations made by a jury is limited by the clearly erroneous/manifest error standard. This court may not reverse a jury’s findings if they are reasonable in light of the record reviewed in its entirety. Rosell v. ESCO., 549 So.2d 840 (La.1989) and, Martin v. East Jefferson General Hosp., 582 So.2d 1272 (La.1991).
Negligence is not presumed. The burden of proving negligence by a preponderance of the evidence rests on the alleging party. Starks v. Kelly, 435 So.2d 552 (La.App. 1 Cir.1983). In Butler v. Eastern College of Health Vo., 631 So.2d 1254, 1256 (La.App. 5 Cir.1994), this court explained:
|7The issue of liability in this matter is determined by a consideration of the principles of the duty/risk analysis. Mundy v. Dept. of Health & Human Res., 620 So.2d 811 (La.1993). Those principles require plaintiff to prove that the conduct in question was the cause-in-fact of the injury, that the defendant owed a duty of care to plaintiff which encompassed the harm caused, and that duty was breached by the defendant. Mundy v. Dept. of Health & Human Res., supra. Whether a duty is owed is a question of law. Faucheaux v. Terrebonne Consolidated Government, 615 So.2d 289 (La.1993); Mundy v. Dept. of Health & Human Res., supra. Whether defendant has breached a duty owed is a question of fact. Mundy v. Dept. of Health & Human Res., supra.
Plaintiff argues that the defendant breached a duty to mark, label or barricade the construction site, in order to prevent accidents such as the one in the present case, and the breach of that duty created liability. The plaintiff relies on Dunaway v. Rester Refrigeration Service, Inc., 428 So.2d 1064 (La.App. 1 Cir.1983), writs denied, 433 So.2d 1056, 1057 (La.1983).
Plaintiffs representation of the holding in Dunaway, supra, is only partially correct. The court in that ease, relying on Sullivan v. Gulf States Utilities Company, 382 So.2d 184 (La.App. 1 Cir.1980), writ denied, 384 So.2d 447 (La.1980), held that it is the duty of one doing construction work to properly label, mark or barricade places in the construction site that present an unreasonable risk of harm to persons using the area; Dunaway v. Rester Refrigeration Service, Inc., supra, at 1067 (emphasis added). Whether the coil of cable, clearly visible on the ground at the site, presented an unreasonable risk of harm which required marking by the contractor is a question of fact to be determined by the jury. Raziano v. Lincoln Property Co., 520 So.2d 1213 (La.App. 5 Cir. 1988).
Here, the construction work involved the moving of a utility pole on plaintiffs property. The testimony reveals that there were no barricades or markings near the coil. However, the evidence shows that the area was a well |8manicured lawn owned by and familiar’ to the plaintiff; and that the obstruction was a large coil of wire placed'on the ground near the site, clearly visible to all. The evidence does not support plaintiffs claim that the coil represented a place that presented an “unreasonable risk of harm to persons using the area”. Therefore, we cannot find that the jury was manifestly erroneous in their conclusion that the defendants were not at fault in the accident.
Because we find no error in the rejection of plaintiffs claim of negligence against the defendants, we need not consider the issues of comparative negligence on the part of the plaintiff.
For the foregoing reasons the judgment of the trial court is affirmed.
AFFIRMED.