662 So.2d 531 (1995)
Ethel BROWN individually and on behalf of Bryanne Brown, Susanne Brown and Brian Brown
v.
GENERAL MOTORS CORPORATION, Allstate Insurance Company McIlwain Cadillac
Wilfred BROWN
v.
GENERAL MOTORS CORPORATION, Allstate Insurance Company McIlwain Cadillac.
Nos. 95-CA-244, 95-CA-245.
Court of Appeal of Louisiana, Fifth Circuit.
October 18, 1995.
Rehearing Denied November 17, 1995.
*533 Stephen P. Bruno, Natasha R. Zimmerman, New Orleans, for plaintiff/appellant.
Elizabeth Smyth Sirgo, Metairie, for defendant/appellee.
KLIEBERT, WICKER and GOTHARD.
WICKER, Judge.
This is an appeal in a personal injury suit arising out of an automobile accident, in which the jury found in favor of the defendant, resulting in dismissal of plaintiff's suit. Plaintiff has appealed. We affirm, for the reasons that follow.
Ethel Brown filed suit individually and on behalf of her minor children against General Motors Corporation, McIlwain Cadillac, Inc., and Allstate Insurance Company for injuries she and the children suffered while riding in the family car. The accident occurred on November 9, 1990, as the family was traveling north on Interstate 55 in Mississippi in the family's 1980 Cadillac, driven by plaintiff's husband, Wilfred Brown. The right rear axle broke and sheared off, causing the rear of the vehicle to crash downward and strike the road. The car shifted wildly from side to side along the highway, throwing the passengers violently about, before coming to a stop in the shoulder of the road. The plaintiff alleged she and her children were injured as a result.
*534 Plaintiff filed suit against General Motors as manufacturer and against McIlwain as seller of the car. She sued Allstate as liability insurer of Wilfred Brown, alleging he failed to maintain the car properly. She also sought recovery from Allstate individually for negligence, alleging Allstate's claims adjuster had failed to properly inspect the vehicle when investigating the Browns' claim for water damage resulting from a 1990 flood. Mr. Brown filed a separate suit against General Motors, McIlwain Cadillac and Allstate, which was consolidated with Mrs. Brown's suit. That case was dismissed, however, and is not before us.
Mrs. Brown dismissed General Motors and McIlwain prior to trial, leaving only her claim against Allstate. The liability and damages aspects of the case were bifurcated for trial. At the end of the trial the judge rendered a directed verdict absolving Allstate, in its individual capacity, of liability for negligent inspection of the vehicle. The question of Mr. Brown's liability went to the jury, which found that Mr. Brown assumed control of maintaining the car, but that he was not negligent. The court rendered judgment dismissing the claims, giving rise to this appeal.
On appeal plaintiff contends: (1) The jury verdict was clearly wrong based on the evidence because the negligence of Mr. Brown was the only possible cause of the accident, in view of the uncontradicted testimony that he assumed exclusive control of maintaining the vehicle. (2) The trial court erred in granting a directed verdict in favor of Allstate, because reasonable persons could have found that Allstate failed to conduct a reasonable inspection of the insured's vehicle and to authorize the draining, flushing and refilling of the rear-end differential fluid after the vehicle had been involved in a flood. (3) The trial court erred by not rendering an independent decision regarding liability of those claims by parties whose claims did not exceed the jurisdictional limit for a trial by jury. (4) The trial court erred in taxing the costs of the trial against the plaintiff without a hearing or any opportunity to oppose such a miscarriage of justice.

FACTS
The Browns' car was a 1980 Cadillac Coupe DeVille. It was 10 years old at the time of the accident and had 183,000 miles on it. Plaintiff presented the testimony of Courtney Busch, an expert in mechanical engineering with a subspecialty in metallurgical engineering. He testified the axle broke because the wheel bearings had become prematurely worn from lack of proper lubrication of the rear-end differential. He opined that, given the car's history of having been through flood waters, the cause was water contamination in the lubrication fluid. He negated any defects in manufacturing or design.
Busch's testimony was supported by that of automotive maintenance expert Henry Sandrock, who testified the rear-end differential fluid should have been drained, flushed and refilled after the car was driven through flood water. He stated the likely cause of the axle's breaking was bearing failure due to lack of lubrication. Both Busch and Sandrock testified that deteriorating bearings produce an audible growl or whine when the car is rolling. Busch said the noise would be present for about 10,000 miles before the bearings fail completely and cause the axle to break. Both experts testified that a normal visual inspection will not detect bearing failure and that bearing failure is usually suspected when a vehicle owner complains of noise. At that point a mechanic must remove the rear wheels to inspect the differential and bearings.
In the years preceding the accident, the car had been driven through flood waters on three occasionsin 1988, 1989 and in 1990. Allstate, as the insurer, had inspected the car following the floods and had paid for repair work as a result of flood damage, but replacement of the rear-end differential fluid was never among the items included. Several Allstate claims adjusters testified they would not recommend changing the rear-end differential fluid unless there is water in the transmission and/or engine oil or such service has been recommended by a mechanic.
Mr. Brown testified he performed routine maintenance on the car himself. He also maintained careful records of all commercial *535 servicing performed on the car; his records showed that during the ten years before the accident, the car had been serviced or repaired 48 times. The front-end bearings had been changed twice. Much of the work on the car was performed by Mr. Brown's friend, Leamon Scott, a construction worker who was formerly an auto mechanic. Scott changed the front-end bearings only a week before the accident occurred.
Mr. Brown had never had the rear-end differential bearings changed nor had he ever had the fluid drained, flushed and refilled. He stated he knew that bearings had to be replaced when his wife complained of a roaring sound. After he had the front-end bearings changed the week before the accident, the roaring sound stopped. He stated he had no reason to believe there was anything wrong with the car before the trip and he heard no noise from the rear end of the car. He also admitted he is deaf in one ear (thus raising the possibility he did not hear the sound of the rear bearings failing). He had never informed any of the mechanics who worked on the car that it had been through flood waters on three occasions..
Mrs. Brown testified she usually used the Cadillac and customarily drove it to her job at a local hospital. Her husband handled maintenance and upkeep of their cars and she left all such matters to him. She did not notice any sound from the rear end of the car during the trip on which the accident occurred.
Harold Myers testified for Allstate as an expert mechanical engineer. Based on his examination of the ruined axle and differential, he stated the bearing failure could have been caused by failure of the differential seal, which let the lubricants escape, or by wearing out due to age, or by a piece of metal breaking loose inside the differential and getting into the bearing and seal and damaging them. In his opinion there will not always be audible sound when a bearing is failing, particularly inside a relatively soundproof vehicle such as a Cadillac, when the air conditioning is on and there is other noise such as a radio.
In Myers' opinion Mr. Brown had properly maintained his vehicle. Myers stated that standards for maintaining the Cadillac recommend checking the level of the fluid in the rear-end differential every 7,500 miles, but do not mention changing the fluid. He did not find it unusual that the front-end bearings would have had to be changed twice, without such apparent need for changing the rear bearings, because he said the rear-end differential is a sealed system, but the front-end differential is not a sealed system. Thus, moisture, dust and debris are more likely to get into the front bearings than into the rear.

ISSUES

I. Negligence of Mr. Brown
It is uncontested that Mr. Brown handled all maintenance for the car. Plaintiff contends Mr. Brown was negligent in failing to have the rear-end differential fluid drained, flushed and refilled during the life of the car. Plaintiff argues he should have known, because of having to replace the front-end bearings twice and because the car had been through flood waters several times, that the rear-end differential bearings would be affected.
The evidence, however, shows Mr. Brown was assiduous in maintaining the car. The maintenance schedule provided in the Cadillac owner's manual stated the fluid level should be checked every 7,500 miles. The owner's manual does not mention draining and replacing the fluid. A couple of months before the accident Mr. Brown had taken the car to Westbank Lubrication Destination to be lubricated. The receipt for that service indicated the level of the rear-end differential fluid had been checked but it had not been refilled, indicating the fluid level was normal.
Although deference to the factfinder should be accorded, the court of appeal, and the Louisiana Supreme Court, nonetheless have a constitutional duty to review facts. Of course, the reviewing court may not merely decide if it would have found the facts of the case differently. Rather, notwithstanding the belief that they might have decided it differently, the court of appeal should affirm the trial court where the latter's judgment is not *536 clearly wrong or manifestly erroneous. Because the court of appeal has a constitutional function to perform, it has every right to determine whether the trial court verdict was clearly wrong based on the evidence, or clearly without evidentiary support.
Ambrose v. New Orleans Police Dept. Ambulance Service, 93-3099 (La. 7/5/94), 639 So.2d 216, 221.
On the record before us, the jury's findings were neither clearly wrong nor clearly without evidentiary support. The transcript as a whole reveals that the testimony of the experts and the lay witnesses in this case differed; therefore, the jury's decision to accept the version favorable to the defense cannot be disturbed on appeal. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Martin v. East Jefferson General Hosp., 582 So.2d 1272, 1277 (La. 1991).
Plaintiff contends the jury's verdict "reflects a reluctance by the jury to allow a family member to recover for the damages caused by the negligence of another family member from his insurer as permitted by the Louisiana Direct Action Statute." This statement, however, is mere surmise on plaintiff's part; there is nothing in the record to support it.

II. Negligence of Allstate
Plaintiff complains the trial judge erroneously granted a directed verdict in favor of Allstate as to its individual liability. In deciding whether the motion should have been granted, we must consider all the evidence in the light and with all reasonable inferences most favorable to the plaintiffs. Courtney v. Winn-Dixie Louisiana, Inc., 447 So.2d 504, 507 (La.App. 5th Cir.1984), writ denied, 449 So.2d 1359. Moreover, a motion for a directed verdict should be granted only when the facts and inferences point so strongly in favor of one party that the court believes reasonable people could not reach a contrary verdict. Hastings v. Baton Rouge Gen. Hosp., 498 So.2d 713, 718 (La.1986). It is appropriate only when the evidence overwhelmingly points to one conclusion. Hastings, supra.
Under the foregoing legal principles the question presented on appeal is not whether in our view the plaintiffs had proven their case against defendants by a preponderance of the evidence, but rather, whether, upon viewing the evidence submitted, we conclude reasonable people could not have reached a verdict in favor of the plaintiffs against any one of the defendants.
Villaronga v. Gelpi Partnership Number 3, 536 So.2d 1307, 1309 (La.App. 5th Cir.1988), writs denied, 540 So.2d 327 (La.1989).
As noted in the discussion of the evidence, the Allstate representatives stated they would not normally authorize the draining, flushing and refilling of the rear-end differential fluid on flood claims unless they detect water in the oil or transmission fluid or unless it is recommended by the insured's mechanic. They also testified that Allstate claims centers are not equipped for more than a visual inspection of the easily-accessible portions of automotive mechanical systems. Thus, Allstate claims adjusters do not take apart and inspect the rear-end differential of a car. They lack not only the tools but also the mechanical expertise.
Plaintiff contends Allstate's contractual right to inspect damaged property for which it may be liable under its policy is accompanied by a duty to conduct a thorough examination. In effect, plaintiff would impose on an insurer the duty to be an expert mechanic, or carpenter, or electrician, etc., when inspecting damage claims of its insureds.
We find no such duty imposed by the insurance contract. Allstate's automobile policy (Coverage HH, Auto Comprehensive Insurance) provides that Allstate's obligation is simply to pay for "direct and accidental loss to [the insured's] auto or a non-owned auto not caused by collision." The policy also provides that both the insured and Allstate have "a right to demand an appraisal of the loss," and to submit any disputes to an arbitrator. Allstate "may pay for the loss in money, or may repair or replace the damaged or stolen property." The policy language *537 cannot reasonably be construed to warrant that Allstate will discover hidden damage that the insured has not discovered.
The rights and obligations of the parties herein concerned are predicated upon certain terms and conditions of a contract. The courts may not make a contract for the parties. Their functions and duty consist simply in interpreting and enforcing the agreement as actually made. It is self-evident that a failure to restrict the rights of an injured person to the terms and conditions of the insurance contract would expose the insurer to liability far and beyond the scope of the contract.
Hallman v. Marquette Casualty Company, 149 So.2d 131, 135 (La.App. 2nd Cir.1963).
We conclude reasonable people could not have reached a verdict in favor of plaintiff on this issue. Accordingly, we find no error in the granting of the directed verdict.

III. Claims below jurisdictional amount for jury
Plaintiff asserts her claims on behalf of her children did not, individually, reach the jurisdictional amount for a trial by jury (at that time, $20,000 per claim). Although defendant had requested a jury trial in the early stages of the case, plaintiff had never contested defendant's right to a jury on any of the claims. On the day of trial plaintiff's counsel notified the judge that the children's claims were below the jurisdictional amount.
The trial judge informed plaintiff's counsel that he nevertheless intended to refer the entire case to the jury. Plaintiff neither objected to the ruling nor sought relief by way of supervisory writs.
[W]here separate causes of action are properly cumulated in the same judicial demand by one or more plaintiffs against one or more defendants, a jury trial, timely and properly granted to the defendant(s), extends to all issues in the cumulated actions unless the parties stipulate otherwise; unless the right to trial by jury as to certain issues does not exist; or, unless the trial court orders a separate trial of the properly cumulated actions pursuant to La. C.C.P. art. 465.
Gilbert v. Laborde, 93-761 (La.App. 3rd Cir. 2/2/94), 632 So.2d 1162, 1167, writs denied, 94-0896 (La. 5/20/94), 637 So.2d 480.
A party who wishes to complain of a ruling allowing a jury trial cannot wait until an adverse jury verdict and then complain only on appeal therefrom. Rather, he should do so prior to trial, either by application for writs or other appropriate means; otherwise he will be held to have acquiesced in the granting of the jury trial or to have waived his right to object to it. Windham v. Security Ins. Co. of Hartford, 337 So.2d 577, 579 (La.App. 4th Cir.1976), writ denied, 341 So.2d 407 (La.1977). Under these circumstances, we find no reversible error in the trial court's ruling allowing the children's claims to go to the jury.

IV. Taxing of costs
Appellant asserts she was taxed with the defendant's costs of $6,761.71 without being afforded a hearing and without a rule to tax costs. She contends the court committed reversible error in imposing such a burden without giving her the opportunity to oppose it.
Our own review of the record establishes that the original judgment, signed on April 25, 1994, dismissed plaintiff's claims at plaintiff's costs. Plaintiff objected to the taxing of costs by way of a motion to amend judgment, which was set for contradictory hearing on June 30, 1994. Defendant not only opposed plaintiff's motion but also filed a motion to tax costs, also set for hearing on June 30, 1994. Both parties appeared at the hearing on that date. The court's judgment on the motions, dated June 11, 1994, assessed costs against the plaintiff in the specific amount listed.
The taxing of court costs is within the discretion of the trial court. "Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause. Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable." La.Code Civ.P. art. 1920. The prevailing party is not taxed with costs unless in *538 some way he incurred additional costs pointlessly or engaged in other conduct which justified an assessment of costs against that litigant. Laughlin v. Breaux, 515 So.2d 480, 485 (La.App. 1st Cir.1987). That rule denies to a trial judge the power either to refuse to award his or her own costs to a prevailing party or to assess another party's costs against a prevailing party unless some circumstances present in the case justify doing so. Muller Elec. Corp. v. E.I. Dupont De Nemours & Co., Inc., 450 So.2d 746, 749 (La.App. 5th Cir.1984).
On review, a trial judge's assessment of court costs can be reversed by this court only on a showing of abuse of discretion. Courtney v. Winn-Dixie Louisiana, Inc., supra, at 510. The record before us reveals no abuse of discretion in the trial court's assessment of costs.

DECREE
For the foregoing reasons, the judgment of the district court is affirmed. Costs of this appeal are assessed against the appellant.
AFFIRMED.