732 So.2d 597 (1999)
Allen PENTON
v.
Hilton SCHUSTER, Josephine Schuster and State Farm & Casualty Company.
No. 98-CA-1068
Court of Appeal of Louisiana, Fifth Circuit.
March 30, 1999.
Rehearing Denied May 10, 1999.
*598 Brian G. Birdsall, New Orleans, Attorney for Appellant.
Frederick A. Miller, Leonard M. D'Angelo, Metairie, Attorneys for Appellee.
Panel composed of Judges SOL GOTHARD, MARION F. EDWARDS and SUSAN M. CHEHARDY.
MARION F. EDWARDS, Judge.
Plaintiff Allen Penton appeals a judgment in favor of defendants Hilton and Josephine Schuster, dismissing his action in tort for injuries received when he slipped on a loose tile in the bathroom of his apartment, owned by defendants. Defendants have answered the appeal, urging error in the assessment of court costs. We reverse that portion of the judgment assessing costs against defendants, and affirm in all other respects.
Allen Penton filed suit in the Twenty-Fourth Judicial District Court for injuries received when he slipped on a bathroom tile in his apartment on July 24, 1995. Plaintiff averred that the tile had become loosened after flooding in his apartment in May of that year. In his petition he alleged that he injured his ankle, causing him pain, suffering, and loss of income, *599 among other damages. Penton urged that defendants, as owners of the apartment building, were liable both in negligence and under the theory of strict liability. Trial was held eliciting the following relevant testimony.[1]
Julie Panepinto, Mr. Penton's former sister-in-law (now his fiancé), testified that plaintiff had custody of his children, and that she assisted him in taking care of them. She would go to the plaintiff's apartment 3 or 4 times a week as needed. Panepinto owned a Doberman Pincher which she brought with her when she visited the apartment. The apartment had been flooded on May 8, 1995, causing damages. In the bathroom there was mildew, the vanity was falling apart and some of the floor tiles became loose over a period of time. Penton made about 20 calls to his landlord to complain about flood damage. Panepinto testified that she overheard Penton complain about the loose tiles.
At the time of the accident, she was helping Penton with packing. Plaintiff went into the bathroom, and then she heard him scream. She found him on the ground. He told her he had slipped on a loose tile. His ankle appeared to be injured. She helped him to get to the hospital. He was treated at the emergency room and released.
On the night of the accident, Ms. Panepinto took photographs of the bathroom floor, which did not include a photo of the loose tile.
Allen Penton testified that he has custody of his two sons, ages 14 and 10, who live with him. He is a tugboat captain with St. John Towing Company. His schedule is seven days on, seven days off; however, he works on his days off ninety percent of the time. In the entire time he lived at the Schuster property he never missed a rent payment. However, in July of 1995, a discrepancy at the bank caused his check to be returned marked "NSF".
The apartment consisted of two bedrooms, one bath, a living room and a kitchen. The flooding destroyed the carpet and affected the tiles on the kitchen and bathroom floors. He had checked the tiles immediately after the flood, and "might" have checked them occasionally afterward. The water loosened at least some of the tiles. The carpeting was removed. As the tiles gradually became loose, Penton pulled them up. On the day of the accident, he walked into the bathroom and a tile slipped, causing him to fall and twist his ankle. The tile had become disconnected from the floor. It was a complete surprise to him. After the fall his ankle was very swollen. Ms. Panepinto helped him up and into the car and to the hospital. He saw Mr. Schuster and told him, "You see, Mr. Schuster, I've been asking you to get this place fixed." He also told defendant that he expected to have his doctor bill paid as well as any lost wages.
Plaintiff stated that when Ms. Panepinto came over, she usually had her dog with her. Shortly after the flood another (stray) dog was in the residence for some days, until plaintiff gave it away. Defendant asked plaintiff to remove the other dog from the premises, but plaintiff told him the dog did not belong to him. After he had removed the 40 or 50 percent of the tiles (the ones which had buckled), he did not attempt to remove the remaining tiles. Although plaintiff had the loose tile at home, he did not bring it to court. He admitted that he forgot to produce it when asked to do so in discovery proceedings. No picture of the offending tile existed.
Defendant Hilton Schuster testified that immediately following the flood, he offered to put plaintiff up in a motel. Previously, he had made any necessary repairs as soon as possible. Prior to the flood, he heard dogs barking from inside the apartment *600 and told Penton that dogs were not allowed in the property. After the flood and consultation with an insurance adjuster, Schuster asked Penton to remove the dogs in order to allow the contractor into the premises. When
Penton refused, claiming the dogs were not his work was begun on the other apartment.
Because plaintiff had given him an NSF check for the rent, and because he refused to remove the dogs, defendant obtained an eviction notice. On the day of the accident, plaintiff was moving out. Defendant was on the premises with a contractor, and would have initiated work on Penton's apartment had the dogs been removed and the rent paid. When plaintiff passed by, he told Mr. Schuster that he had sprained his ankle and asked defendant if he were going to pay the bill. Penton did not show him the loose tile.
Following presentation of the evidence, the trial court rendered judgment in favor of defendant, dismissing plaintiff's suit. In his reasons for judgment, the trial court stated that plaintiff "assumed the risk" of having the accident because he was fully aware that the tile on the bathroom floor was loose, and he failed to exercise reasonable care for his own safety.
On appeal, plaintiff urges that under the theory of strict liability, the court erred in finding that plaintiff failed to prove defendants liable. Further, plaintiff asserts that use of the term "assumption of the risk" by the trial court was a legal error requiring a de novo review of the record. We disagree. The court in Millet v. Cormier 95-953 (La.App. 3rd Cir. 3/27/96), 671 So.2d 1101, addressed the same issue as follows:
Although the Louisiana Supreme Court abolished assumption of the risk, it has maintained its well established policy that "the duty which a landowner owes to persons entering his property is governed by a standard of reasonableness, and that a potentially dangerous condition that should be obvious to all comers is not, in all instances, unreasonably dangerous." Socorro v. City of New Orleans, 579 So.2d 931 (La.1991); Murray, 521 So.2d at 1136 (citing Shelton, 334 So.2d at 410). "Therefore, under a duty/risk analysis, if the facts of a particular case warrant, there could be a finding that a defendant owed no duty under circumstances, or on the other hand, that a plaintiff was 100% at fault." Socorro, 579 So.2d at 941.
Applying that jurisprudence the appellate court there determined that the trial judge could easily have deleted his reference to assumption of risk and could have substituted that he found that plaintiff was 100% at fault under the circumstances presented in that case, or that the trial court could have found the cord over which plaintiff (may have) tripped was not unreasonably dangerous.
We find that reasoning applicable to the present case. Further, as we found in Le v. Johnstown Properties, 572 So.2d 1070 (La.App. 5th Cir.1990):
The plaintiffs cite Murray v. Ramada Inns, Inc., supra for the proposition that assumption of the risk no longer totally bars recovery. While this is true, it does not preclude the finding of 100 percent contributory negligence on the part of the plaintiff under the doctrine of comparative fault. As stated by the Murray court:
However, the key to a finding of no liability in such cases is not the plaintiff's subjective awareness of the risk, but the determination that the defendant did not act unreasonably vis-a-vis the plaintiff, or injure the plaintiff through the instrumentality of an unreasonably dangerous thing in his custody....
We find that the use of the term "assumption of the risk" was not legal error, but rather a finding on the part of the trial court that either plaintiff was 100% liable *601 for the injuries which he received, or that the floor was not unreasonably dangerous.

STRICT LIABILITY
In Celestine v. Union Oil Co. of California, 94-C-1868 (La.4/10/95), 652 So.2d 1299, our Supreme Court discussed the liability of the owner of premises for injuries suffered. There the court stated:
An owner's liability for a vice or defect on the premises is rooted in La. C.C. arts. 2317 and 2322. Both articles impose strict liability, or liability without fault, based upon status as an owner or custodian rather than on personal fault. Under La.C.C. art. 2317, liability is imposed upon an individual as a custodian for damage caused by things in his custody. Under La.C.C. art. 2322, an owner is liable for damages to any person injured in an accident caused by the owner's neglect to repair the building or from a defect in its original construction. Olsen v. Shell Oil Co., 365 So.2d 1285 (La.1978).
To recover under La.C.C. 2317, a plaintiff must prove that he was injured by a thing which was in the care or custody of the defendant and that such thing was defective. Fonseca v. Marlin Marine Corp., 410 So.2d 674 (La.1981); Loescher v. Parr, 324 So.2d 441 (La. 1975). To recover under La. 2322 against an owner of a building, a plaintiff must prove that the building posed an unreasonable risk of injury to others and that he was damaged by virtue of this risk. Entrevia v. Hood, 427 So.2d 1146 (La.1983). Celestine would like the inquiry to end at this point with the conclusion that as Union was the custodian of the platform and as Celestine was injured by an alleged defect or risk of injury on the platform, then Union is strictly liable. However, this interpretation of the law ignores the definition of "defect" and an "unreasonable" risk and the limitations placed on an owner's liability.
A building owner is not responsible for all injuries resulting from any risk posed by his building; he is only liable for those injuries caused by an unreasonable risk of harm to others. Entrevia, 427 So.2d at 1149. Likewise, strict liability requires the plaintiff to prove that the vice or defect of the thing is a condition which poses an unreasonable risk of harm to others. Sistler v. Liberty Mutual Insurance Co., 558 So.2d 1106 (La.1990). Thus, to prevail under the strict liability theories embodied in La.C.C. arts. 2317 and 2322, Celestine must show that he was exposed to an unreasonable risk of harm from the condition of the handrail which he was hired to repair....
(Emphasis in original)
The unreasonable risk of harm criterion is not a simple rule of law which can be applied mechanically to the facts of a case. Entrevia v. Hood, 427 So.2d 1146 (La.1983). Claims and interests should be balanced, risk and gravity of harm should be weighed, and individual and societal rights and obligations must be considered. Entrevia v. Hood, supra; Celestine, supra.
... the determination of whether a particular risk of harm is reasonable is a matter wed to the facts of the case. Perhaps except only in ultrahazardous cases, it is impossible and improper to characterize a risk as unreasonable without consideration of the surrounding circumstances.
Celestine, supra. Also Delpit v. Greater Lakeside Corp., 97-188 (La.App. 5th Cir. 10/15/97), 701 So.2d 1017.
Put another way, not every defect can serve as a basis for a claim. The defect must be of such a nature as to constitute a dangerous condition which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. Henry v. Safeco Ins. Co., 498 So.2d 1116 (La.App. 3rd Cir.1986), writ denied, 501 So.2d 235 *602 (La.1987); Le v. Johnstown Properties, supra.
The trial court apparently found that there was a loose tile on which plaintiff slipped, and in this we find no manifest error. Thus the issue to be resolved was whether the loose tile was, under the particular circumstances, an unreasonable risk of harm, which could be expected to cause injury to a prudent person using ordinary care under the circumstances. The evidence at trial preponderates toward the conclusion that Penton was well aware of the condition of the floor in the bathroom. The photograph of the area admitted at trial shows a floor with some tiles missing, but none that appear to be warped or loose. Surrounding circumstances evidence that at least one large dog remained inside the apartment, against the rules and wishes of Schuster. Defendant repeatedly asked plaintiff to remove the animal, to which plaintiff replied (somewhat) disingenuously that the dog did not belong to him. Defendant pointedly told Penton that the contractor would not enter to make repairs unless the dog was removed, yet the animal remained. We cannot say the trial judge was wrong in his implicit finding that, under all of the circumstances, the loose tile did not present an unreasonable risk of harm, and in his specific finding that plaintiff did not exercise reasonable care for his own safety. See Millet, supra, wherein the 3rd Circuit concluded that the trial court was not erroneous in its finding that conditions present at the site where plaintiff fell, including the presence of an extension cord, were not unreasonably dangerous, since the cord was obvious, and he was familiar with its placement. Also Depp v. Louisiana Power and Light Co., 94-274 (La.App. 5th Cir. 10/12/94), 645 So.2d 740, where this court found that a coil of cable placed on a lot with low cut grass was clearly visible and not unreasonably dangerous.

NEGLIGENCE
To prove the negligence of a thing's owner under C.C. art. 2315, the plaintiff must prove that "something about the thing created an unreasonable risk of injury that resulted in the damage, that the owner knew or should have known of that risk, and that the owner nevertheless failed to render the thing safe or to take adequate steps to prevent the damage caused by the thing." Kent v. Gulf States Utilities Co., 418 So.2d 493, 497 (La.1982), (emphasis supplied); Teel v. State, Dept. of Transp. and Development, 96-0592 (La.10/15/96), 681 So.2d 340.
Because of our holding above that the risk to Mr. Penton was not unreasonable, defendant cannot be found liable under a negligence theory.
Therefore, the judgment of the trial court dismissing plaintiffs case is affirmed.

ANSWER TO APPEAL
Defendants have answered the appeal, urging that the trial court abused its discretion in failing to assess all costs against the plaintiff, since defendants prevailed, and there was no equitable basis in the record for not doing so. Defendants cite Lynch v. Hanover Ins. Co., 611 So.2d 121 (La.App. 5th Cir.1992).
La. C.C.P. art.1920 provides as follows:
Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.
Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.
The prevailing party is not taxed with costs unless in some way he incurred additional costs pointlessly or engaged in other conduct which justified an assessment of costs against that litigant. Laughlin v. Breaux, 515 So.2d 480, 485 (La.App. 1st Cir.1987); Brown v. General Motors Corp., 95-245 (La.App. 5th Cir. 10/18/95), 662 So.2d 531. That rule denies to a trial judge the power either to refuse *603 to award his or her own costs to a prevailing party or to assess another party's costs against a prevailing party unless some circumstances present in the case justify doing so. Brown v. General Motors Corp., supra; Muller Elec. Corp. v. E.I. Dupont De Nemours & Co., Inc., 450 So.2d 746, 749 (La.App. 5th Cir.1984). On review, a trial judge's assessment of court costs can be reversed by this court only on a showing of abuse of discretion.
Our examination of the record reveals no equitable basis or justification for assessing costs of the trial against defendants. Therefore, it was an abuse of discretion for the court to impose such costs against the defendants.
For the foregoing reasons, that portion of the judgment which taxes costs of trial to defendants is reversed and all costs are assessed against plaintiff. In all other respects, the judgment is affirmed. Costs of this appeal are imposed upon plaintiff.
REVERSED IN PART; AFFIRMED IN PART.
NOTES
[1] Because of our finding vis-a-vis liability, we do not include evidence and testimony on medical or other items of damage.