712 So.2d 162 (1998)
Terry Wayne JACKSON, Plaintiff-Appellant,
v.
Van BEASLEY, et al., Defendant-Appellee.
No. 30359-CA.
Court of Appeal of Louisiana, Second Circuit.
April 8, 1998.
*163 Brittain & Sylvester by Jack O. Brittain, and Donna J. Duplechian, Natchitoches, for Plaintiff-Appellant.
Gold, Weems, Bruser, Sues & Rundell by Eugene J. Sues, Alexandria, for Defendant-Appellee Jackson Parish Police Jury.
Ursy & Weeks by Freeman R. Matthews, Metairie, for Defendant-Appellee Van Beasley.
Hudson, Potts & Bernstein by Ben R. Hanchey, Monroe, for Defendants-Appellees, Town of Jonesboro, and Scott Brown.
Before MARVIN, C.J., and NORRIS and HIGHTOWER, JJ.
MARVIN, Chief Judge.
In this action for personal injury damages against the Jackson Parish Police Jury and others by an arrestee who sustained a serious injury while in custody in the Jackson Parish courthouse, the arrestee, Terry Wayne Jackson, appeals a summary judgment in favor of the Police Jury.
Jackson was either thrown into a clear plexiglass panel or stationary window in a hallway of the courthouse by law enforcement officers [his version] or intentionally threw himself into the window in an attempt either to escape from custody or to harm himself and avoid being incarcerated in the jail in the courthouse [the officers' version].
A photo of the plexiglass panel or stationary window in question, measuring 3 feet in width by 12 feet in height according to Jackson, is reproduced in the next section of this opinion. Jackson crashed into, but not through, the window. Jackson's injuries, including a broken neck, rendered him a quadriplegic. The sole allegation against the Police Jury is the "faulty" design of the windows in the courthouse posing an unreasonable risk of harm.
We affirm the summary judgment.

FACTS
Jonesboro police officers arrested Jackson for disturbing the peace on May 3, 1994, transporting him to the courthouse to book and jail him. There, in the presence of the officers and one or more sheriff's deputies, the officers told Jackson that other charges would be brought against him. Immediately after protesting the charges and saying that he did not want to be placed in jail, Jackson incurred his injuries. A photo of the fixed window or panel, similar to others on each floor of the courthouse, is reproduced:
*164 
In its motion for summary judgment the Police Jury asserts that under either Jackson's version or the officers' version of what occurred, some "harm" to Jackson was intended and that the Police Jury is not liable because it did not owe Jackson a duty to protect him either from his own intentional conduct or from the conduct of other persons [Jonesboro police officers and Jackson Parish deputies] for whom the Police Jury is not vicariously responsible. Jackson does not contend that the Police Jury is vicariously responsible for the conduct of the police officers or the deputies. Jonesboro police officers are employed and paid by the city of Jonesboro. Deputies are employed and paid by the Sheriff. Neither employer is supervised or paid by the Police Jury.
The Police Jury further contends that the fact that the fixed window panels in the *165 courthouse are clear plexiglass without warning signs or decals is of no consequence because such a fact would not have prevented the intentional conduct under either Jackson's version or the officers' version of what occurred.
In his affidavit, Johnny Templeton, Secretary and Treasurer of the Police Jury, stated that during the several years since the panels were installed there have been no other incidents involving any person running into or being thrown into the panel or being injured in any way by the plexiglass panel.
In opposition to summary judgment, Jackson contends the plexiglass window presents an unreasonable risk of harm because the panel, being of such appearance, size and length at the end of the hallway gives the impression that the hallway is open to the exterior of the courthouse. Of course Jackson contends that the material fact of how he was propelled into the window remains genuinely disputed.
Excerpts from Jackson's deposition testimony are attached to his memorandum in opposition to the motion. In his opposing affidavit, Jackson stated that he did not intentionally run into the glass or try to kill himself in order to avoid going to jail. He stated that if he did run towards the panel, "it was due to a momentary lapse of memory as to the existence of the plate glass window." In his deposition, Jackson says that he was trying to avoid the excessive force used by the officers and get them away from him as they struggled in the hallway.
Written reasons for summary judgment were not given or requested.

DISCUSSION

Summary Judgment
Summary judgment is designed to secure the just, speedy and inexpensive determination of every action allowed by law. NAB Natural Resources, L.L.C. v. Willamette Industries, Inc., 28,555 (La.App.2d Cir. 8/21/96), 679 So.2d 477, 479. The legislature amended the provisions of La. C.C.P. art. 966 in 1996 in order to bring Louisiana's summary judgment procedure more closely in line with federal summary judgment procedure as explained in Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In 1997, the legislature again amended the provisions of Art. 966 for the purpose of clarifying the 1996 changes and legislatively overruling all cases inconsistent with Hayes v. Autin, 96-287 (La.App. 3d Cir. 12/26/96), 685 So.2d 691, 694, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41, which had declared that the 1996 amendment brought Louisiana's standard for summary judgment closely in line with the federal courts' "more liberal standard." Whether or not the 1996 and 1997 amendments actually changed the standard for summary judgment is debatable, but there can be no doubt that the legislature intended our courts to follow Celotex with respect to summary judgment procedure.
We conduct a de novo review of the documents supporting and opposing a motion for summary judgment under the same criteria which governs a trial court's determination of whether summary judgment is appropriate. Goodliffe v. State, Dept. of Transp., 29,948 (La.App.2d Cir. 10/29/97), 702 So.2d 36, 38. Because the recent amendments to Art. 966 are procedural, they are to be given retroactive effect. Goodliffe, supra at 38. Even though the trial court granted summary judgment under Art. 966 before the 1997 amendment, we review the summary judgment under Art. 966 after the 1997 amendment.
Among the provisions of Art. 966, amended by Act 483 of 1997 and based on Celotex, supra, are those in subsection (C)(2) regarding what is required by whom to prevail on a motion for summary judgment. If the movant does not have the burden of proof at trial on the specific fact in question, the movant is not required to negate all essential elements of the adverse party's claim. Instead, the movant only needs to show the absence of facts that support one or more of the elements that are essential to the adverse party's burden of proof. If the movant shows the absence of such supporting facts, the adverse party who has the burden of proof must produce factual support sufficient to establish that he will satisfy his evidentiary burden at trial. If the adverse party fails *166 to produce factual support opposing the motion for summary judgment, no genuine issue of material fact exists on the specific question. Art. 966(C)(2).

Strict Liability
Jackson asserts only that the Police Jury is strictly liable because of the faulty design of the fixed plexiglass panels or windows in the courthouse posing an unreasonable risk of harm. La. C.C. arts. 2317, 2322; La. R.S. 9:2800.
Act 1 of 1996, which enacted art. 2317.1 and amended art. 2322, also made fundamental changes to the strict liability concept. These changes now require a plaintiff to also prove that defendant knew or should have known of the vice or defect; that the damage could have been prevented by the exercise of reasonable care; and that defendant failed to exercise such reasonable care. The addition of knowledge as an element has effectively eliminated strict liability in most circumstances. See Frank L. Maraist and Thomas C. Galligan, Jr., Louisiana Tort Law § 14-1 (1996).
Because Jackson's claim arose before the April 16, 1996 effective date of Act 1 of 1996, we must first consider whether these significant changes to the law of strict liability are to be applied retroactively. In the absence of contrary legislative expression, substantive laws apply prospectively only. La. C.C. art. 6. A substantive law imposes new duties, obligations or responsibilities, or establishes new rules, rights and duties or changes existing ones. Manuel v. Louisiana Sheriff's Risk Management Fund, 95-0406 (La.11/27/95), 664 So.2d 81, 86. The changes in strict liability made by Act 1 are not procedural, but are considered to have a substantive effect. Frank L. Maraist and Thomas C. Galligan, Jr., Burying Caesar: Civil Justice Reform and the Changing Face of Louisiana Tort Law, 71 Tul.L.Rev. 339, 369 (1996).
La. R.S. 9:2800, enacted in 1985, also greatly limited the liability of the state and its political subdivisions under Art. 2317 by requiring proof of actual or constructive notice of the vice or defect except when the damage is caused by the condition of a building. Because La. R.S. 9:2800 changed substantive law in 1985, it was held to be applied prospectively. Landry v. State, 495 So.2d 1284, 1290 (La.1986).
We similarly hold that because Act 1 of 1996 made substantive changes to the strict liability laws and does not contain language that it is to be applied retroactively, the 1996 change in strict liability should not be applied retroactively. We shall review Jackson's strict liability claim under the law in effect in 1994 when his cause of action arose.
La. R.S. 9:2800(A) provides that "[a] public entity is responsible under La. C.C. art. 2317 for damages caused by the condition of buildings within its care and custody." The Police Jury is required by La. R.S. 33:4715 to provide a "good and sufficient court-house" and a "good and sufficient jail." The Police Jury is also statutorily responsible for the physical maintenance of all parish jails and prisons. La. R.S. 15:702.
To prove strict liability under Art. 2317, Jackson must establish that he was injured by a thing in the Police Jury's custody; that the thing had a defect that created an unreasonable risk of harm, and that his damage was caused by the defect. Spott v. Otis Elevator Co., 601 So.2d 1355, 1363 (La.1992); Dorthlon v. St. Francis Medical Center, Inc., 28,426 (La.App.2d Cir. 6/26/96), 677 So.2d 654, 656.
To recover under Art. 2322 against the owner of a building, Jackson must prove that the plexiglass panel or fixed window posed an unreasonable risk of injury to others and that his injury occurred through this risk. Entrevia v. Hood, 427 So.2d 1146, 1148 (La.1983).
Under strict liability, it is the defendant's legal relationship with the property containing a defect that gives rise to a duty. Oster v. Dept. of Transp. & Development, 582 So.2d 1285, 1288 (La.1991); Loescher v. Parr, 324 So.2d 441, 446 (La.1975). However, the finding of the existence of a defect alone is not sufficient to establish liability. Boyle v. Board of Sup'rs, 96-1158 (La.1/14/97), 685 So.2d 1080, 1083. "[A building owner] cannot be held responsible for all injuries resulting from any risk posed by his building, only those caused by an unreasonable risk of *167 harm to others." Entrevia, supra at 1149. The absence of an unreasonably dangerous condition of the property implies the absence of a duty. Oster, supra at 1288.
We must therefore consider whether Jackson provides factual support for his burden of proving that the plexiglass panel posed to him an unreasonable risk of harm. La. C.C.P. art. 966; Celestine v. Union Oil Co. of California, 94-1868 (La.4/10/95), 652 So.2d 1299, 1303.
When determining whether a risk is unreasonable, a court is to balance the likelihood and magnitude of the harm and the utility of the thing, while also taking into account a broad range of social, moral, and economic factors including the cost to the defendant of avoiding the risk and the social utility of the plaintiff's conduct when the accident occurred. Oster, supra at 1289; Entrevia, supra at 1149. Justice and social utility are guideposts, with consideration given to individual and societal rights and obligations. Celestine, supra at 1304.
The magnitude of injury suffered by Jackson was great. He was rendered a quadriplegic from the impact with the fixed window. In contrast, the risk of injury from a stationary panel is minimal. Templeton's affidavit established that there have been no other incidents involving the plexiglass panel. The fact that the hallway ends with the plexiglass panel is obvious because a hedge is growing immediately outside the panel several inches above floor level of the hallway. This is clearly shown in the photograph. This hedge is a visible barrier to anyone who might mistakenly perceive that the panel at the end of the hallway is "open" to the courthouse grounds. Moreover, the window is encased by a frame that extends from each wall of the hallway and a few inches above the floor level and below the ceiling of the hallway. This frame is easily distinguishable from the adjacent walls and floor, being darker in color. The panel also extends much higher toward the ceiling than the doorways on each side of the hallway near the plexiglass panel. The framed panel window shows no handle, doorknob or other ornament to indicate that it is even a door which allows outside ingress or egress. See photo, supra.
Some economic and social utility is derived from the framed panels that extend within a few inches of the floor and ceiling of the hallways. Sunlight is aesthetically pleasing and reduces utility costs. The plexiglass panels on each floor of the courthouse are a part of the architectural design of the building and contribute to its overall appearance.
Glass panel doors leading to the outside of a building or residence have been discussed in other instances:
A large sheet of thin, clean, transparent, untempered, not laminated glass presents such an obvious risk of serious injury that it must be considered a hazardous substance. The location of such glass panels, blocking entry and exit through openings in houses designed as passageways multiply the opportunities for serious accidents.
The very least the owner of a building must do is warn a visitor when such a transparent door is closed. The warning is so simple and inexpensive, especially when compared with the risk of harm, that its absence ought not be excused. A decal, decorative tape, paint, or a simple strip of masking tape might be sufficient to prevent serious injury.

Dixon v. Allstate Ins. Co., 362 So.2d 1368, 1370 (La.1978). Our emphasis.
Other cases also involve injuries resulting from contact with or through a glass door or a glass panel surrounding a door to the outside. See, e.g. Turner v. Pointe Coupee Parish School Bd., 577 So.2d 755 (La.App. 1st. Cir.1991), writ denied, 580 So.2d 673 (La.1991) [defendant liable for not installing safety glass when a schoolgirl pushed her hand through a glass panel in a door].
These cases, however, are factually distinguishable. Dixon, e.g., concerned an injury occurring when Judith Dixon walked through a sliding glass door, breaking it. The glass door separated a den from a porch, with the floor of the porch being basically an extension of the floor of the den as both surfaces were made of broken paving tiles interrupted only by the track for the sliding glass door. The opinion noted the difficulty of Dixon *168 realizing at what point the den floor ended. The doorway and floorway invited exit from the den onto the porch.
In Jackson's circumstances, we see nothing about the plexiglass panel that posed difficulty to Jackson or "invited" one to exit the hallway onto the courthouse grounds. As noted, the frame surrounding the panel distinguishes it from the adjacent doorways and defines the fixed panel as a fixed window. The hedge growing outside the fixed window is several inches higher than the floor level of the hallway. Any person in the hallway should readily see that the panel is not a doorway inviting exit to an outside sidewalk, but rather a fixed window at the end of a hallway that simply allows a view of the landscaped grounds of the courthouse and provides light to illuminate the hallway. The fixed windows in the courthouse, in short, are not doorways as in the cases cited above.
Jackson similarly adopts the foregoing conclusions that negate that the panel appeared as an inviting doorway, by alternatively asserting in his opposing affidavit that if he ran towards the fixed panel at the end of the hallway, he did so because of a "momentary lapse of memory as to the existence of the plate glass window." Our emphasis.
Each case asserting either or both strict liability and negligence must be decided on its own peculiar circumstances. Ebarb v. Guinn Bros., Inc., 29,179 (La.App.2d Cir. 2/26/97), 691 So.2d 228, writ denied, 97-1120 (La.6/13/97), 695 So.2d 981. We limit our determination in this case to whether any duty of the Police Jury, as custodian of the courthouse, served to prevent the risk of injury to a plaintiff under two circumstances: The first circumstance is the plaintiff's version that he was either thrown by police officers into the fixed plexiglass panel at the end of a courthouse hallway or that because of his momentary lapse of memory as to the existence of the panel, plaintiff ran into the panel to escape from excessive use of force by the police officers. The second circumstance is the version of the police that the plaintiff intentionally threw himself into the panel either to escape custody or to harm himself and avoid being incarcerated in the jail in the courthouse.
We conclude that under neither version or circumstance does the Police Jury owe a duty to Jackson to protect him against the stated risk of harm. If Jackson was negligently or intentionally propelled into the end of the hallway by the officers, as he alleges in his petition, it would simply not matter that the end of the hallway was plexiglass or other relatively solid material, whether tempered glass, brick, metal, wood or sheetrock over an outside wall incorporated into the structure of the courthouse. The Police Jury, of course, is obligated to maintain the structure and stability of the courthouse and its jail even for persons who are arrested. In the broadest sense, however, this obligation does not extend to protect one who may be thrown into, or intentionally or inadvertently throw himself into, a structural part of the courthouse.

CONCLUSION
Once the Police Jury pointed out the absence of factual support by showing that the framed and fixed plexiglass panel or window in the structural wall at the end of the hallway was not unreasonably dangerous and did not pose an unreasonable risk of harm, Jackson was required to produce factual support sufficient to show that he would be able to satisfy his evidentiary burden of proof at trial. Art. 966. This requirement is not met by Jackson's sworn version(s) of what happened. Jackson has not shown a factual basis, but only a conclusion, that the framed and fixed plexiglass panel or window being incorporated into the structural wall of the courthouse made the end of the interior hallway constitute an unreasonable defect or faulty design presenting an unreasonable risk of harm.
We find no genuine issue of material fact concerning the alleged faulty design of the courthouse.

DECREE
At Jackson's cost, summary judgment in favor of the Police Jury is AFFIRMED.
HIGHTOWER, J., concurs with written reasons.
*169 HIGHTOWER, Judge, concurring.
In reference to the result, I fully concur.
Concerning whether the 1996 and 1997 amendments changed the standard for summary judgment, however, I fail to view that proposition as "debatable." Indeed, those enactments not only favor summary judgment, but also direct that the procedure "shall be construed to accomplish" just and inexpensive determinations in all except certain disallowed actions. La. C.C.P. art. 966 A(2).