729 So.2d 733 (1999)
Gregory NICHOLS, Plaintiff-Appellant,
v.
NORTHEAST LOUISIANA UNIVERSITY, et al., Defendants-Appellees.
No. 31,120-CA.
Court of Appeal of Louisiana, Second Circuit.
February 24, 1999.
Rehearing Denied March 25, 1999.
*734 Rivers, Beck, Dalrymple & Ledet by Eugene A. Ledet, Jr., Robert L. Beck, Jr., Alexandria, Counsel for Appellant.
Richard P. Ieyoub, Attorney General, Baton Rouge, W. Craig Henry, Special Assistant Attorney General, Counsel for Appellees.
Before NORRIS, STEWART and PEATROSS, JJ.
STEWART, J.
Gregory Nichols filed suit against Northeast Louisiana University ("NLU") and the Board of Trustees for State Colleges and Universities asserting strict liability and negligence claims for damages sustained when he fell from the walkway outside of his third floor dormitory room. The trial court dismissed Nichols' claims, and he now appeals the trial court's judgment. For the reasons set forth herein, we affirm the judgment of the trial court.

FACTS
At the start of the 1992 fall semester at NLU, Gregory Nichols lived in room 361 of Sherrouse Hall with his roommate, Freddy Woodworth. Room 361 shared a common bathroom with room 362. Nichols' suitemates in room 362 were John Cyganiewicz and David Barlow. The two dorm rooms were located on the third floor and opened onto a concrete walkway protected by a 42 inch railing which met all building code requirements.
On August 31, 1994, Nichols along with his roommate, suite-mates, and several female friends spent the late afternoon socializing in the area of the two-room suite, both inside the rooms and outside on the walkway. Nichols had one beer during the afternoon. At one point, Nichols left with Jennifer McEachern Tucker, his girlfriend at that time, to go pick up his pay from Sal's Saloon where he worked at the door. They also picked up two daiquiris for friends waiting at the dorm. Nichols, who was a member of NLU's drum line, was required to attend a band class at 8 p.m. that evening. When he and McEachern returned to the dormitory, Nichols realized that it was time for the class. He began gathering his things and went into the bathroom to brush his teeth. He then went into room 362, exited onto the walkway to spit his toothpaste over the railing, and fell over the railing onto the ground. The accident rendered Nichols a paraplegic below the T7 level.
Nichols filed suit against NLU and the Board of Trustees of State Colleges and Universities alleging both negligence and strict liability theories of recovery. Nichols' main contention was that NLU breached its duty to students to properly maintain and repair the roof on Sherrouse Hall and that NLU allowed an unreasonable risk of harm to exist on the dormitory walkway. Specifically, Nichols alleged that the third floor roof had been poorly inspected and maintained and that the lack of maintenance resulted in leaks or dripping from the roof. The "perpetual dripping" caused ponding of water on the concrete floor of the walkway and spawned the growth of algae making the concrete floor unsafe.
Following trial in March 1997, the trial court dismissed Nichols' claims. The trial court found that while the condition of the roof from lack of maintenance may be a *735 defect, Nichols failed to prove that the walkway posed an unreasonable risk of harm as required to recover under a strict liability theory. With regard to Nichols' negligence theory of recovery, the trial court found that while NLU may have breached its duty to properly maintain the roof of Sherrouse Hall, this breach was not the cause in fact of Nichols' injury.
Nichols appeals this adverse judgment and assigns three errors. Nichols asserts that the trial court erred in finding that the walkway did not create an unreasonable risk of harm, in finding that NLU's conduct was not the cause in fact of the accident, and in failing to consider NLU's liability in light of La. C.C. art. 2322 and La. C.C. art. 2695.

DISCUSSION
The basic issue presented for our consideration is whether the trial court erred in finding no liability on the part of NLU for the accident which resulted in Nichols' injuries. The two theories under which NLU may be liable are negligence and strict liability based on La. C.C. art. 2315 and La. C.C. art. 2317, respectively.
While these two theories have traditionally been distinguished by the fact that a plaintiff asserting a strict liability claim was not required to prove that the owner or custodian of a thing which caused damage either knew or should have known of the risk involved, La. R.S. 9:2800 removes this distinction in claims against public entities. Lee v. State, Dept. of Trans. & Development, 97-0350 (La.10/21/97), 701 So.2d 676. La. R.S. 9:2800 requires a plaintiff who asserts a claim based on La. C.C. art. 2317 against a public entity to prove that the public entity had actual or constructive notice of the vice or defect which caused the damage. Consequently, the analysis of liability on the part of a public entity is the same under both the negligence and strict liability theories. Lee v. State, Dept. of Transp. & Development, supra; Faulkner v. State, Dept. of Transp. & Development, 25,857 (La.App. 2nd Cir. 10/26/94), 645 So.2d 268; writ denied, 94,2901, 94,2908 (La.1/27/95), 649 So.2d 390.
Under either theory, the plaintiff must prove that the defendant had custody of the thing which caused the damage, that the thing was defective in that it created an unreasonable risk of harm, that the defendant had actual or constructive knowledge of the defect and failed to take corrective measures within a reasonable time, and that the defect was a cause in fact of plaintiffs' injuries. Lee v. State, Through Dept. of Transp. & Development, supra.; Odom v. State, Dept. of Transp. and Development, 95-1605 (La.App. 3rd Cir. 9/25/96), 688 So.2d 1082; Faulkner v. State, Dept. of Transp. & Development, supra. Applying this analysis to the question of NLU's liability, it is not necessary to treat Nichols' assignments of error as arising under different theories of recovery as did the trial court.
It is undisputed that NLU had custody of Sherrouse Hall where the accident occurred. The trial court determined the deteriorated condition of the roof of Sherrouse Hall to be a defect attributable to lack of maintenance and resulting in several active water drips. However, the finding of a defect alone is not sufficient to establish liability. Boyle v. Board of Supervisors, Louisiana State University, 96 1158 (La. 1/14/97), 685 So.2d 1080; Jackson v. Beasley, 30,359 (La.App. 2nd Cir. 4/8/98), 712 So.2d 162. Nichols contends that the water drips or "perpetual leaks," particularly the leak along the walkway in front of room 362, resulted in ponds of water, moisture, and growth of algae which together created a slippery surface. Nichols contends that the slippery walkway was an unreasonably dangerous condition that caused his fall over the railing.
The determination of whether a defect presents an unreasonable risk of harm is a factual determination subject to the manifest error standard of review. Reed v. Wal-Mart Stores, Inc., 97-1174 (La. 3/4/98), 708 So.2d 362. Causation is also a question of fact, and findings of causation are also subject to the manifest error standard. Holt v. State, Dept. of Transp. & Development, 28,183 (La.App. 2nd Cir. 4/3/96), 671 So.2d 1164; writ denied, 96-1132 (La. 6/21/96), 675 So.2d 1080; Greer v. State Farm Mut. Auto Ins. Co., 26,028 (La.App. 2nd Cir. 8/17/94), 641 *736 So.2d 1053. When the trial court's findings of fact are reasonable in light of the entirety of the record, an appellate court may not reverse even if convinced that it would have weighed the evidence differently. Where conflict exists in the testimony, reasonable evaluations of credibility and inferences of fact should not be disturbed on review. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993). When two permissible views of the evidence exist, the fact finder's choice between them cannot be clearly wrong or manifestly erroneous. Stobart v. State, Through DOTD, supra; Rosell v. ESCO, 549 So.2d 840 (La.1989).
Nichols asserts that the slippery surface on the walkway caused him to fall over the railing. Nichols claims that in a continuous motion he approached the railing to spit his toothpaste out, leaned his torso forward with his navel against the railing and both hands on it, and felt his feet slipping backward as his body flipped over the railing. Nichols further claims that he was able to hold the railing for a split second.
Witnesses to the accident testified in accordance with Nichol's version. Daidre Boulton testified that Nichols leaned over the railing at a forty-five degree angle with his hands on the railing while acting as though vomiting the toothpaste. Boulton saw Nichols go over the railing and tried to grab his arm while he hung with his back against the railing. Boulton testified that Nichols began falling straight down, then went forward and managed to duck or tuck his head and land on his back. Dana Robertson testified that Nichols, in one continuous motion, walked "very fast" toward the railing and started to spit over the railing as he fell over it. Jennifer McEachern Tucker stated in her deposition testimony that they were all "goofing off prior to the accident. She stated that she saw Nichols put his hands on the railing while he spit out toothpaste and that she touched his wrist as he hung with one arm on the outside of the railing before he lost his grip. John Cyganiewicz also testified in a video deposition that the accident occurred as Nichols spit toothpaste over the railing. Cyganiewicz also stated that Nichols was in a hurry and that they were all "joking around" at the time. All of these witnesses denied seeing Nichols hoist himself over the railing.
However, none of the witnesses to the accident testified that Nichols fell over the railing because he slipped on a wet or slick spot on the concrete walkway or that the accident was caused by a dangerous condition on the floor of the walkway. McEachern testified that she had noticed at times wet spots or slime in the area in front of room 361 but had not touched the substance. Boulton testified that just prior to the accident she felt water dripping onto the railing, but she did not notice whether the concrete walkway was wet. An expert witness in the area of architecture, David L. Perkins, Sr., also testified about the deterioration of the roof on Sherrouse Hall and the condition of the walkway. Perkins stated that there appeared to be an algae-like growth on areas of the walkway and that the concrete in those areas would tend to be smooth. Perkins opined that this condition provided the opportunity for the concrete to become slippery, especially with the addition of water. When asked about the feel of the darkened spots or areas of growth on the concrete walkway, Perkins explained that there was a difference but that it was not an appreciable difference. There was no testimony regarding complaints about the condition of the walkway or regarding prior accidents or slips on the walkway.
An expert in biomechanics, Dr. James Ziegler, testified on behalf of NLU and disputed Nichols' version of how the accident happened. Dr. Ziegler explained that in order for Nichols to go over the railing, his body must first go up; a slip would cause the body to go down, rather than up. Much of Dr. Ziegler's testimony was based on center of gravity or center of mass calculations derived from a 1965 Air Force study. Using this study and Nichols' height and weight at the time of the accident, Dr. Ziegler estimated Nichols' center of gravity to be 39 to 40 inches above his feet. The rail was 42 inches above the walkway. Dr. Ziegler opined that Nichols' center of mass would have to be above the railing and that some outward impetus would be needed for him to fall as described by Nichols and the witnesses. Dr. *737 Ziegler also opined that angular momentum would be needed for Nichols to have rotated during the 24 foot fall so that he landed as he did rather than on his feet. However, he stated that Nichols had no angular momentum when he released the railing and fell to the ground. When asked whether the center of mass estimation would change depending on the body type or build of the individual, Dr. Ziegler explained the center of mass would not move up or down much, even if an individual had a massively developed upper body as compared to the lower body.
While the record does establish the existence of water leaks and associated conditions on the concrete walkway in front of rooms 361 and 362, the record does not establish that the walkway was especially slippery nor does the record establish that the condition of the walkway contributed to or caused Nichols' accident. The standards for deciding the issue of causation are the same whether the claim is based on negligence or strict liability. Jones v. Peyton Place, Inc., 95-0574 (La.App. 4th Cir. 5/22/96), 675 So.2d 754. Cause in fact is a "but for" inquiry. Conduct is a cause in fact of the plaintiffs harm if the plaintiff would not have sustained the injury but for the defendant's substandard conduct. The "substantial factor" test is an alternative method for determining cause in fact, particularly when multiple causes are present. If the defendant's conduct was a substantial factor in bringing about the plaintiffs harm, cause in fact is established. Regardless of which method is used, the cause in fact inquiry is a neutral inquiry, free of policy considerations. Roberts v. Benoit, 605 So.2d 1032 (La.1991).
In this instance, the record does not establish that the condition of the walkway, or NLU's conduct, was a cause in fact of Nichols' fall over the railing. The testimony of Nichols and the witnesses to the accident describes Nichols as barely leaning over the railing. Even if Nichols did slip backwards on a slick spot on the concrete walkway as he leaned his torso over the railing with his hands on the railing, it is difficult to conclude that such a slip would propel him forward in a somersault movement and over the forty-two inches high railing. Nichols spent the late afternoon and early evening socializing with friends and joking around. Testimony indicated that he was pretending to vomit the toothpaste over the railing. He was in a hurry to get to class and was at least "walking fast" toward the railing to spit out the toothpaste when he fell over the railing. Under these circumstances, it was Nichols' own actions which resulted in and caused this serious accident. The mere presence of water leaks or algae-like growth on the walkway may be sufficient to cause a person walking along the walkway to slip and fall onto the concrete walkway, but nothing in this record establishes that such conditions caused or contributed to Nichols' fall over the railing. Furthermore, no evidence indicated past problems, such as falls or slippery conditions on the walkway. Under the facts and circumstances of this case, we find that NLU's conduct was not a cause in fact of Nichols' accident and resulting injuries.
Our determination that NLU's conduct was not a cause in fact of Nichols' accident obviates the necessity of addressing Nichols' claims under La. C.C. arts. 2322 and 2695, as liability under both of these articles requires proof of causation. See Jackson v. Beasley, supra; McGinty v. Pesson, 96-850 (La.App. 3rd Cir. 12/11/96), 685 So.2d 541.
While this was an unfortunate accident and our natural sympathies incline toward providing some relief for Nichols, relief is not available in this instance in which the record compels the conclusion that the defendant's conduct was not cause in fact of the accident. Our consideration of the record in its entirety reveals no manifest error in the trial court's denial of Nichols' claims.

CONCLUSION
For the reasons discussed, we affirm the judgment of the trial court. Costs of this appeal are assessed against Nichols.
AFFIRMED.

APPLICATION FOR REHEARING
Before NORRIS, C.J., GASKINS, STEWART, CARAWAY, PEATROSS, JJ.
Rehearing Denied.