759 So.2d 843 (2000)
Robert F. TRICE and Lumberman's Mutual Casualty Company
v.
Katherine Scott ISAAC, Katherine Scott Isaac d/b/a Scott's Grocery and Scott's Grocery, Inc.
No. 99-CA-839.
Court of Appeal of Louisiana, Fifth Circuit.
February 16, 2000.
Rehearing Denied March 20, 2000.
Writ Denied June 2, 2000.
*844 Jerome M. Volk, Jr., Paul R. Wegmann, Kenner, Louisiana, Attorneys for Appellants.
Norman J. Pitre, Luling, Louisiana, Attorney for Appellee.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY and MARION F. EDWARDS.
EDWARDS, Judge.
Plaintiff/appellant Robert F. Trice filed suit for injuries sustained when he tripped over a curb between the concrete parking area and concrete sidewalk leading to the entrance of Scott's Grocery in St. Charles Parish. Scott's, a convenience store, is owned by the defendant/appellee Katherine Scott Isaac. Following a trial on the merits, the court granted judgment in favor of Mrs. Isaac and dismissed the action. We affirm as follows.
On April 1, 1993, Trice was a relief driver at Marigold Foods Inc. and was making a delivery of ice cream products to Scott's. The store opened that same day, and Trice, who had not previously been to the location, backed up his delivery truck to the right of the store entrance. He entered the store to ascertain what products the store needed and saw that the new freezer was completely empty. Trice went back outside to load an order, climbing inside the truck and moving the items near the side door of the truck. Then he went to the back of the truck to pick up his loading cart. As he proceeded to pull the cart out, he stepped backwards and fell to the ground. He realized he had tripped on the vertical elevation separating the parking lot from the store sidewalk. Trice suffered a broken ankle in the fall.
Because he was within the course and scope of his employment, Trice received worker's compensation benefits paid by Lumberman's Mutual Insurance Company. Trice filed a tort suit in 1994 against Scott's and its owner Mrs. Isaac, alleging *845 both strict liability and negligence as theories of recovery. Lumberman's intervened in the suit for reimbursement of compensation and medical expense benefits.
In granting judgment in favor of Scott's and Mrs. Isaac, the trial court found that the sole and proximate cause of the accident was the negligence of Trice "in not taking proper precautions as he stepped backwards and in not seeing what he should have seen". The court noted that Trice had traversed the sidewalk successfully going into and out of the store just previously and that he saw or should have seen the 3-inch elevation. The court specifically found:
(1) there was no "thing" in the care, custody, and control [of] the defendant which caused the damages (the cause being plaintiff's own negligence), (2) there was no vice or defect which created an unreasonable risk of harm (the pictures show the elevated sidewalk to be clearly visible), and (3) there were no injuries caused by the defect (because there was no defect).
On appeal, Trice avers that the trial court erred by failing to find that the present matter is controlled by Sistler v. Liberty Mutual Insurance Co.[1]; in failing to allocate the comparative fault of Scott's, in failing to find that Trice was owed the same duty as any other patron, in failing to give proper weight to the unopposed expert testimony of the expert witness, in improperly considering that Trice had previously crossed the elevated rise before he tripped, and in denying a new trial based on the consideration of whether the "threshold" and "not the elevated rise at issue" presented an unreasonable risk of harm.
Trice testified that he did not see the elevated sidewalk when backing up his truck and that at the time of the accident, it was noon, and there were no shadows. Looking from the street to the store, the ground looked "like one solid patio". When he went to get his cart from the back of the truck, he stepped back, closed the door, and went down. When he hit the step, he was not looking behind him to see where he was going because he didn't think that he had to [look]. He had stepped up and down easily when he entered and exited the store.
Dennis Howard, a safety consultant, testified by deposition to the following facts and opinions. Mr. Howard visited the scene and examined photographs of the area taken in November of 1993. According to his measurements, the rise from the parking lot to the walkway was between 2½ and 2 ¾ inches. Judging from the photographs, the elevated curbing was of such color that it is easily missed by a pedestrian engaged in anything other than watching where he is placing his foot. Typically, when there is a change in elevation there is a need to delineate it in some way, normally with a yellow paint used to connote a hazard. Mr. Trice would have been looking peripherally as he was coming out of the back of his truck and would not have seen a differentiation in color, texture or shadowing so as to apprise him of a potential hazard. The fact that Mr. Trice did not have problems upon first entering the store would not give him a reason to remember that there was a step for which he had to make an accommodation. The unmarked change in elevation could represent a hazard. Use of the warning paint is inexpensive. However, there is no building code or requirement that the elevated walkway be painted other than for handicap access or delineation of parking permits.
As a result of the 1996 Louisiana Legislature's adoption of La. Civ.Code art. 2317.1, which was accompanied by an amendment to La. Civ.Code art. 2322, fundamental changes to the strict liability concept have occurred. These changes now require plaintiffs who allege negligence under strict liability to prove that the defendant *846 knew or should have known of the vice or defect.[2] The addition of knowledge as an element has effectively eliminated strict liability in most circumstances.[3] However, the incident before us took place in 1993 prior to the revision, and this court must apply the pre-revision law.[4]
In an action asserting strict liability as grounds for recovery, the plaintiff bears the burden of proving: 1) the thing which caused damages was in the care, custody and control of the defendant; 2) the thing had a vice or defect which created an unreasonable risk of harm; and 3) the injuries were caused by a defect.[5] La. Civ.Code art. 2322 references the modifications applicable to the owner of a building.
The first element of the plaintiffs case under articles 2317 and 2322 is legal fault which arises out of the legal relationship between the defendant and the person or thing whose conduct or defect creates an unreasonable risk of injuries to others. The fault of the owner is based upon his failure to prevent the building for which he is responsible from causing such an unreasonable risk of injury to others.[6]
The second element of strict liability requires the plaintiff prove the vice or defect of the thing is a condition which poses an unreasonable risk of harm to others. The dangerous aspect of the thing must be unreasonable. Reasonableness of the risk is determined by balancing the probability and magnitude of the risk against the utility of the thing.[7]
The third element is the causal relationship between the defect and the damages. Thus, to recover in strict liability against an owner of a building the injured person must prove the building, or its appurtenances, "posed an unreasonable risk of harm to others" and that his damage occurred because of the risk.[8]
The trial court here found that there was no defect which caused an unreasonable risk of harm. This finding is one which we review under the manifest error standard.[9]
A defect is a condition that creates an unreasonable risk of harm to persons on the premises.[10] In the present case the only expert testimony was that of Mr. Howard. The trial court, as trier of fact, has great discretion to accept or reject testimony of experts like any other witness,[11] and is not bound by expert testimony. Rather, expert testimony must be weighed just as any other evidence.[12] In evaluating the evidence produced at trial *847 the court especially noted the photographs of the scene submitted by Mr. Trice. Those pictures along with the testimony of Mr. Trice that he had just successfully traversed the step and was not looking as he moved backward support the conclusion of the trial court that no condition existed which created an unreasonable risk of harm. While the fact that Mr. Trice had just entered and exited the store is not controlling, the timing of that fact is relevant.
The photos show an elevated walkway which, although made of the same material as that of the parking area, is a clearly visible step up. A pedestrian is not required to look for hidden dangers, but is bound to observe his course to see if his pathway is clear. The pedestrian is held to have seen those obstructions in his pathway which would have been discovered by a reasonably prudent person exercising ordinary care under the circumstances.[13] The elevation change was apparent and required no special warning. Mr. Trice fell as soon as he pulled the cart out of the truck, indicating that there was not sufficient space between the truck and the sidewalk to safely perform such a maneuver.
While the legal analysis of Sistler is binding on this court, the facts are distinguishable and contrary to Mr. Trice's assertion do not compel a finding of liability in the present case. Unlike the present matter in which the step was obvious, the facts in Sistler involved a change of elevation on a floor surface which was not readily apparent to an elderly customer. We disagree with Mr. Trice's interpretation of Sistler and find that the lack of warning signs to mark a change of elevation do not automatically create an unreasonable risk of harm. Here we find no manifest error in the determination by the trial court that the step did not constitute a defect.
The trial court did not rely on a theory of contributory negligence but rather assessed Mr. Trice with 100% fault.
Although the Louisiana Supreme Court abolished assumption of the risk, it has maintained its well established policy that "the duty which a landowner owes to persons entering his property is governed by a standard of reasonableness, and that a potentially dangerous condition that should be obvious to all comers is not, in all instances, unreasonably dangerous." Socorro v. City of New Orleans, 579 So.2d 931 (La.1991); ... "Therefore, under a duty/risk analysis, if the facts of a particular case warrant, there could be a finding that a defendant owed no duty under circumstances, or on the other hand, that a plaintiff was 100% at fault."[14]
We find no error in the assessment of fault determined by the trial court.
Finally, in denying the motion for a new trial, the court stated that Mr. Trice had "crossed this threshold before". Mr. Trice urges that such statement evidences the trial court's misunderstanding of Sistler as applied to the present facts. Our reading of those reasons discloses that the issue is semantic rather than substantive, and the assignment of error is without merit.
To prove the negligence of a thing's owner under C.C. art. 2315, the plaintiff must prove that "something about the thing created an unreasonable risk of injury that resulted in the damage, that the owner knew or should have known of that risk, and that the owner nevertheless failed to render the thing safe or to take adequate steps to prevent the damage caused by the thing." Kent v. Gulf States Utilities Co., 418 So.2d 493, 497 *848 (La.1982), (emphasis supplied); Teel v. State, Dept. of Transp. and Development, 96-0592 (La.10/15/96), 681 So.2d 340.[15]
Because there was no unreasonable risk of harm, Scott's and Mrs. Isaac cannot be liable under a theory of negligence.
For the foregoing reasons, the judgment is affirmed. Mr. Trice is assessed with all costs of appeal.
AFFIRMED.
NOTES
[1] Sistler v. Liberty Mutual Insurance Co., 558 So.2d 1106 (La.1990).
[2] Jackson v. Beasley, 30,359 (La.App. 2 Cir. 4/8/98), 712 So.2d 162, 166.
[3] See Frank L. Maraist and Thomas C. Galligan, Jr., Louisiana Tort Law § 14-1 (1996); Greenhouse v. C.F. Kenner Associates Ltd. Partnership, 98-0496 (La.App. 4th Cir. 11/10/98) 723 So.2d 1004; Jackson v. Beasley, supra.
[4] Dufour v. E-Z Serve Convenience Stores, Inc. 98-996 (La.App. 5th Cir. 3/30/99), 731 So.2d 915, 917. Also Norton v. Claiborne Elec. Coop, Inc. 31,886 (La.App. 2 Cir. 5/5/99), 732 So.2d 1256; Jackson v. Beasley, supra..
[5] LSA-C.C. art. 2317; Sistler v. Liberty Mutual, supra, 558 So.2d 1112.
[6] Sistler v. Liberty Mutual, supra, 558 So.2d 1112.
[7] Sistler v. Liberty Mutual, supra, 558 So.2d 1112.
[8] Sistler v. Liberty Mut. Ins. Co., supra, 558 So.2d 1112.
[9] Sistler v. Liberty Mut. Ins. Co., supra, 558 So.2d 1111; Dufour v. E-Z Serve Convenience Stores, Inc. supra.
[10] Celestine v. Union Oil Co. of California, 94-C-1868 (La.4/10/95), 652 So.2d 1299; Lopez v. State, Louisiana Health Care Authority/University Medical Center, 98-577 (La.App. 3rd Cir. 10/28/98) 721 So.2d 518.
[11] Tannehill v. Joguyro, Inc., 97-571 (La.App. 5 Cir. 4/9/98), 712 So.2d 238; Manchack v. Willamette Industries, Inc., 621 So.2d 649 (La. App. 2d Cir.1993).
[12] Johnson v. Tregre, 98-512 (La.App. 5th Cir. 1/26/99), 726 So.2d 1105; Bourgeois v. Roudolfich, 580 So.2d 699 (La.App. 5th Cir.1991).
[13] Millet v. Cormier, 95-953 (La.App. 3rd Cir. 3/27/96), 671 So.2d 1101, 1106, writ denied 96-C-1039 (La.5/31/96), 673 So.2d 1036; Davidson v. Shreveport Yacht Club, Inc., 535 So.2d 1192 (La.App. 2 Cir.1988), writ denied, 537 So.2d 1162 (La.1989).
[14] Penton v. Schuster, 98-1068 (La.App. 5th Cir. 3/30/99), 732 So.2d 597, 600 (some citations omitted.
[15] Penton v. Schuster, supra, 732 So.2d 602.